**STATE**

v.

**Francesco ZANGRILLI.**

**No. 80–206–C.A.**

Supreme Court of Rhode Island.

Jan. 21, 1982.

Dennis J. Roberts II, Atty. Gen., Michael R. Stone, Sp. Asst. Atty. Gen., for plaintiff.

Francesco Zangrilli, pro se.

**OPINION**

KELLEHER, Justice.·

The defendant, Francesco Zangrilli (Zangrilli), was convicted by a justice of the Superior Court of assault with a dangerous weapon under the provisions of G.L. 1956 (1969 Reenactment) § 11–5–2 and was sentenced to eight years at the Adult Correctional Institutions. Zangrilli insisted upon representing himself at the jury-waived trial, agreeing to the appointment of counsel from the Office of the Public Defender to serve only in an advisory capacity. His appeal from that conviction is similarly brought *pro se*.

On January 26, 1979, at approximately 1 a. m., Sergeant Ronald M. Guilmette of the Cranston police department responded to a call to go to the home of Ann Marie Belanger (Ann Marie), Zangrilli's ex-wife, after receiving a call for police assistance from one of Ann Marie's young children. Sergeant Guilmette stated that he rang the doorbell and Ann Marie partially opened the front door. Before he could ask her if anything was wrong, she flung the door wide open and ran outside screaming hysterically, "He's trying to kill me. He's killing me." The sergeant observed that Ann Marie had blood on her face and hands and on the back of her head. He then noticed Zangrilli standing in the entrance hallway of the house, drew his service revolver, and ordered him to "freeze." Zangrilli was unarmed and had been yelling at Ann Marie, "I'll kill you. I'll kill you." Sergeant Guilmette indicated that he had to restrain Zangrilli from pursuing Ann Marie.

Ann Marie's babysitter for that evening testified that Zangrilli had come to the house at around 12:45 a. m., before Ann Marie returned home from work. He asked to be permitted to wait for Ann Marie and instructed the babysitter not to tell her that he was there because it was their anniversary and he wanted to surprise her. Ann Marie explained that she did not become aware of Zangrilli's presence in the house until after the babysitter had left. She

testified that when she asked Zangrilli why he was there, he attacked her, grabbing her by the throat with his hands and strangling her until she could feel her "eyes bulge." Zangrilli, she asserted, told her "he was going to ruin [her] face." In her efforts to free herself, Ann Marie said, she scratched Zangrilli; and when he released her, she fell to the pantry floor, sustaining a cut on the back of the head. According to Ann Marie, Zangrilli then dragged her through various rooms of the house, punched her several times in the face and neck area, and at one point shoved her into the bathtub.

Pictures of the scene taken by the police disclose blood on a bathroom wall and the bathtub. Sergeant Guilmette also testified that he saw blood in the pantry area of the kitchen. As a result of the assault, Ann Marie's jaw was broken in two places. She also suffered an acute lumbosacral strain of the back.

■ Zangrilli advances a multiplicity of contentions on appeal, the vast majority of which challenge the trial justice's findings of facts on the ground that the testimony of the state's witnesses was not credible. The assessment of the credibility of witnesses is the function of the trial court, not this appellate court. Such determinations will not be disturbed on appeal unless the trial justice misconceived or overlooked material evidence or was clearly wrong. *Scotto v. Zifcak*, R.I., 425 A.2d 512, 514–15 (1981); *LaPorte v. Ramac Associates, Inc.*, R.I., 395 A.2d 719, 721 (1978); *Salo Landscape & Construction Co. v. Liberty Electric Co.*, 119 R.I. 269, 272, 376 A.2d 1379, 1381 (1977). No such assertions can validly be made about the conclusions of the trial justice in the instant case. Here the trial justice carefully weighed the testimony of the complainant, dismissing portions thereof as exaggerated. Ultimately, however, the trial justice accepted Ann Marie's overall version of the assault, finding it "entirely believable" and consistent with the other evidence admitted during the trial.

Zangrilli's remaining claims of alleged errors relate largely to matters clearly within the discretion of the trial justice.[1] The record discloses no abuse of discretion on the part of the trial justice in respect to such matters. Therefore, we see no point in addressing his contentions of error individually. There is, however, one legal issue raised by Zangrilli that warrants brief discussion—whether in this jurisdiction the use of hands alone may constitute an assault with a dangerous weapon.

■ The evidence establishes that Zangrilli did not assault Ann Marie with any kind of instrument other than his bare hands. On appeal he argues that his conviction for assault with a dangerous weapon cannot be sustained because he has had no training in the martial arts, boxing, or in any other specialized field to justify classifying his hands as a lethal or dangerous weapon. This argument is without merit. We have no doubt but that an individual's hands, when employed in such a manner as to be likely to produce substantial bodily harm, may properly be qualified as a dangerous weapon.

Although there are no Rhode Island cases addressing this precise question, we are of the opinion that the criteria utilized by the trial justice to determine whether the assault of Ann Marie could appropriately be categorized as an assault with a dangerous weapon fall squarely within the test crafted by this court in *State v. Mercier*, R.I., 415 A.2d 465, 467 (1980). We stated:

"This charge reminds us that there may be a conviction of assault with a dangerous weapon when the object used in the assault is not per se a dangerous

---

1. Zangrilli has raised additional issues by way of an application for postconviction relief, which is currently pending before the Superior Court. In his brief, Zangrilli has expressed concern about the status of this application. Although the Superior Court criminal face sheet contains no entry of such application, the document submitted by Zangrilli bears the stamp of the clerk of the Superior Court, indicating that it was filed on October 31, 1980. The record further indicates that an attorney has been appointed by a Superior Court justice to represent Zangrilli in this matter. We suggest that Zangrilli direct his inquiries regarding the disposition of this particular matter to the appointing justice.

weapon if it appears that the object was used in such a way that it had the capability of producing serious bodily harm. The test is not whether serious bodily harm results, rather it is whether the object was so used that serious bodily harm may have resulted. The object's latent capability alone is not determinative; what is determinative is such capability coupled with the manner of use."

In reaching her verdict, the trial justice emphasized that she had considered the relative sizes and strengths of the victim and her assailant, the manner and duration of the assault, and the severity of the injuries inflicted. She specifically found that Ann Marie had visible bruises on the throat area of her neck as a result of having been grabbed by Zangrilli. She also concluded that Zangrilli had severely struck Ann Marie, punching her in the jaw with sufficient force to fracture her mandible in two places. Summarizing her rationale, the trial justice stated:

"There is no doubt in my mind that he [Zangrilli] had her [Ann Marie] around the throat. He grabbed her by the neck. The manner in which he used his hands on her throat constituted use of his hands in such a way that it could easily have led to her death.

"For that reason, I have concluded that his assault upon her was done with a dangerous weapon. As I say, hands are not per se dangerous weapons, but they are a means to produce death. And they were used, even though briefly, they were used in a manner and in such circumstances as could be reasonably calculated to produce death."

Finally, we note that the approach adopted by the trial justice is well supported by court decisions from other jurisdictions holding that, depending on the circumstances of use, hands alone may be found to be a deadly weapon. *See, e.g., People v. Zankich*, 189 Cal.App.2d 54, 69–70, 11 Cal.Rptr. 115, 124–25 (1961); *Thomas v. State*, 237 Ga. 690, 691–92, 229 S.E.2d 458, 460 (1976); *State v. Heinz*, 223 Iowa 1241, 1259, 275 N.W. 10, 21 (1937); *Vogg v. Commonwealth*, 308 Ky. 212, 214 S.W.2d 86 (1948); *State v. Born*, 280 Minn. 306, 307–08, 159 N.W.2d 283, 284–85 (1968); *Pulliam v. State*, 298 So.2d 711 (Miss.1974); *State v. Gardner*, 522 S.W.2d 323 (Mo.Ct.App.1975); *Pettigrew v. State*, 430 P.2d 808, 812–13 (Okl.1967); *see generally*, 33 A.L.R.3d 922 (1970); Note, *The Fist or Teeth as a Dangerous Weapon*, 7 La.L.Rev. 584 (1947).

The defendant's appeal is denied and dismissed, the judgment of conviction appealed from is affirmed, and the case is remanded to the Superior Court.