778 P.2d 1204

**STATE of Arizona, Appellee,**

v.

**Anthony GORDON, Appellant.**

**No. CR–86–0323–AP.**

Supreme Court of Arizona,
En Banc.

July 18, 1989.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Joseph T. Maziarz, Asst. Attys. Gen., Phoenix, for appellee.

Daniel F. Davis, Tucson, for appellant.

FELDMAN, Vice Chief Justice.

Anthony Gordon (defendant) appeals from convictions for burglary, kidnapping, and sexual assault. He makes two challenges: first, the trial court wrongly enhanced his sentences under A.R.S. § 13–604.02 by allowing the jury to find that his fists constituted dangerous instruments under A.R.S. § 13–105(8); second, the trial court erred by imposing consecutive instead of concurrent sentences. He contends because the charges arose from the same act, A.R.S. § 13–116 requires concurrent sentences.

Because defendant received a life sentence, we have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031 and 13–4035.

## FACTS

In the early morning of May 16, 1986, defendant was driving home from a bar. At the time, he was on parole for prior sexual assault and robbery convictions. He pulled up to the victim at a stop sign and asked if she "wanted to party." Reporter's Transcript (RT), Aug. 6, 1986, at 48. The victim invited him to her apartment for a beer because he appeared well-dressed and a "nice person." *Id.* at 48–49. In the apartment, defendant and the victim talked for several minutes. Suddenly, defendant grabbed the victim, forced her from the couch to the floor, hit her several times with his fists, and sexually assaulted her. After the assault, defendant apologized and allowed the victim to put on her clothes. When he subsequently fell asleep on the couch, the victim escaped and called the police, who apprehended defendant.

At trial, defendant claimed that the victim consented to intercourse and he punched her when he awoke to find her rifling his wallet and demanding money. The jury did not believe defendant, finding him guilty of second degree burglary, kidnapping, and sexual assault. The trial judge also allowed the jury to find that defendant had used dangerous instruments during the felonies: his fists.

The court sentenced defendant to twenty-two years for second degree burglary, life imprisonment without possibility of release for twenty-seven years for kidnapping, and life imprisonment without possibility of release for twenty-seven years for sexual assault. The burglary and kidnapping sentences were concurrent. The court, however, imposed the sexual assault sentence consecutively to the sentences for burglary and kidnapping.

## I. FISTS AS DANGEROUS INSTRUMENTS

The trial court enhanced defendant's kidnapping and sexual assault sentences under A.R.S. § 13–604.02(A). This statute provides that a defendant convicted of a felony "involving the use or exhibition of a deadly weapon or dangerous instrument" while on parole shall receive a life sentence

without possibility of release on any basis until he has served at least twenty-five years.

Defendant claims the trial judge erred by allowing the jury to consider whether his fists constituted dangerous instruments. He argues that as a matter of law fists cannot be dangerous instruments for enhancement purposes.

The statutory definition of "dangerous instrument" is

anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury.

A.R.S. § 13–105(8). The state argues that under this definition the jury may determine whether body parts can be dangerous instruments, and that the jury's verdict must stand if the evidence supports it.

The state admits, however, that no Arizona case defines a fist as a dangerous instrument. Our cases address only whether an *object* constitutes a deadly weapon or dangerous instrument. In *State v. Bustamonte,* dealing with a pair of scissors, we held that if an instrument is not inherently dangerous as a matter of law, like a gun or knife, the jury can determine whether the defendant used the object in such a way that it became a "deadly weapon." 122 Ariz. 105, 107, 593 P.2d 659, 661 (1979); *see also State v. Caldera,* 141 Ariz. 634, 637, 688 P.2d 642, 645 (1984) ("whether or not an object [inoperable firearm] is a deadly or dangerous weapon is a jury question"). Our court of appeals has held that a jury could find that a sock was a dangerous instrument. *State v. Fatty,* 150 Ariz.

587, 589–90, 724 P.2d 1256, 1258–59 (Ct. App.1986); *see also State v. Woodall,* 155 Ariz. 1, 7, 744 P.2d 732, 738 (Ct.App.1987) (jury determined automobile a dangerous instrument).

In the present case, however, defendant used no object in perpetrating the crime, only his fists—part of his body. Indeed, the overwhelming majority of other jurisdictions hold that body parts do not constitute deadly weapons or dangerous instruments. *See* Annotation, *Parts of the Human Body, Other Than Feet, as Deadly or Dangerous Weapons for Purposes of Statutes Aggravating Offenses Such as Assault and Robbery,* 8 A.L.R.4th 1268 (1981).

The state urges us to adopt the minority rule allowing the jury to decide on a case-by-case basis whether a body part can be a dangerous instrument. *See Hollis v. State,* 417 So.2d 617 (Ala.Crim.App.1982); *Kirby v. State,* 145 Ga.App. 813, 245 S.E.2d 43 (1978); *State v. Born,* 280 Minn. 306, 159 N.W.2d 283 (1968); *State v. Jacobs,* 61 N.C.App. 610, 301 S.E.2d 429, *rev. denied,* 309 N.C. 463, 307 S.E.2d 368 (1983); *State v. Zangrilli,* 440 A.2d 710 (R.I.1982); *Kirkpatrick v. State,* 747 S.W.2d 521 (Tex.Ct. App.1988). Given our statutory scheme, we find these cases unpersuasive.

In the cases the state cites, the victims sustained serious physical injury or death,[1] but none of those cases involves statutory schemes that enhance punishment for assault causing "serious bodily injury," even without use of a dangerous instrument or deadly weapon. Each of the statutes only permits enhancement for use of dangerous instruments or weapons.[2] Where differen-

---

1. *E.g., Hollis,* 417 So.2d at 619 (man used fists to beat and break ribs of 81–year–old mother); *Jacobs,* 61 N.C.App. at 611, 301 S.E.2d at 430 (39–year–old, 210–pound male hit and seriously injured 60–year–old woman); *Kirkpatrick,* 747 S.W.2d at 524 (defendant strangled young child with hands and caused brain hemorrhage and death—the most serious physical injury); *but see Born,* 280 Minn. at 306, 159 N.W.2d at 284, as a possible exception.

2. *See* Ala.Code § 13A–6–20 (1975); Minn.Stat. § 609.225, subd. 2; N.C.Gen.Stat. § 14–32 (1979); Tex.Crim.Proc.Code Ann. art. 42.12, § 3g(a)(2) (Vernon Supp.1988). The only possi-

ble exception is the statute in *Zangrilli.* In 1981, the Rhode Island legislature amended the definition of felony assault to include "an assault or battery which results in serious bodily injury...." R.I.Gen.Laws § 11–5–2(a) (1982) (definition of "serious bodily injury" at § 11–5–2(b)). *See* 1981 R.I.Pub.Laws ch. 76, § 1. The *Zangrilli* court, however, did not treat the statutory amendment even though it noted that the defendant may have caused "substantial bodily harm." 440 A.2d at 711–12. Rather, the court found him guilty of felony assault because his fists and feet were a "dangerous weapon." *Id.* at 712. The reason the court did not use the

tiation in the degree of assault is limited to the use of a dangerous instrument or weapon and excludes the type of harm caused as an enhancing factor, the jury naturally may consider the severity of harm in determining whether a body part "qualifies" as a dangerous instrument.

Our statute, however, specifically provides for enhanced punishment when the defendant assaults with a dangerous instrument *or* when he causes serious injury. *See* A.R.S. § 13–604.02. Further, § 13–105(31) defines "serious injury" as

injury which creates a reasonable risk of death, or which causes serious and permanent disfigurement, or serious impairment of health or loss or protracted impairment of the function of any bodily organ or limb.

Because the Arizona statute increases the punishment for the crime if the defendant either uses a dangerous instrument or causes serious harm, no purpose exists for allowing the jury to find that body parts are dangerous instruments just because they caused serious bodily harm.[3]

Further, allowing the jury to find fists a dangerous instrument without serious physical injury creates an undefined standard—a "not so serious physical injury" enhancement test. Some juries would find a body part was a dangerous instrument, even though no serious physical injury resulted, and others would not. Given that the statute already enhances punishment when the defendant causes serious physical injury, the jury would have little to guide it when determining whether a fist is a dangerous instrument. The cases suggest no other factors appropriate to differentiate between when a fist is a dangerous weapon and when it is not.

Finally, if fists can be dangerous instruments, then we must eventually hold that any body part can also be a dangerous

instrument, depending on the circumstances. Allowing the jury to consider body parts as dangerous instruments confuses the essential elements of several crimes. For example, one cannot commit an assault without using, or threatening to use, an object or body part. *See* A.R.S. §§ 13–1203 and 13–1204 (assault and aggravated assault); *see also People v. Van Diver*, 80 Mich.App. 352, 263 N.W.2d 370 (1977) (if bare hands are a weapon every assault would be an aggravated assault and the legislature could not have intended to merge the two offenses).

We also consider the deterrent objective of §§ 13–105(8) and 13–604.02(A). The legislature specifically intended that courts treat paroled felons who commit offenses with dangerous instruments or cause serious physical injury more harshly than paroled felons who do neither. The state asks us to allow juries to treat both types of paroled felons alike. If we do, then felons might as well use a dangerous instrument. We are unwilling to circumvent the legislative objective on this issue.

We hold the trial court erred by allowing the jury to find that defendant's fists were dangerous instruments. Because defendant used no object except his fists in committing the assault, and because he did not inflict serious bodily harm with his fists, the trial court should not have enhanced his punishment under A.R.S. § 13–604.02.

## II. PROPRIETY OF CONSECUTIVE SENTENCES

The trial court imposed *concurrent* sentences on the burglary and kidnapping counts. However, the judge ordered the sexual assault sentence served *consecutively* to the burglary and kidnapping sentences. Defendant argues that these con-

---

"serious bodily injury" amendment to find the defendant guilty of felony assault is unclear. Perhaps the 1981 amendment did not apply to Zangrilli's case, which the court decided January 21, 1982. However, this conforms this case with the other cases the state cites that did not deal with statutes punishing "serious bodily injury."

3. Evidently, the assault that preceded the rape in the present case did not of itself cause serious bodily harm. Defendant was also charged with aggravated assault for causing serious bodily harm but the state dismissed that charge, RT, Aug. 6, 1986, at 5.

secutive sentences violate A.R.S. § 13–116, which reads as follows:

> An act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent.

(Emphasis added.) The question before us, then, is whether the burglary, kidnapping, and sexual assault here constituted an act or multiple acts.

## A. The Facts

Before analyzing the legal tests for determining what constitutes an act, we must review the facts in greater detail. The victim invited defendant into her apartment. Their conversation was friendly at first, but defendant's "mood changed." RT, Aug. 6, 1986, at 54. According to the victim, she was "sitting on the couch, and [defendant] grabbed [her], forced [her] down on the floor," held her and hit her in the face with his fist. Id. Defendant "finished beating [her] in the face, grabbed [her] by the neck and was strangling [her]." Id. at 58. He let go of the victim and "was standing like on top of" her, and while she was still "laying flat on the floor," told her to take her clothes off, which she did "the best [she] could." Id. at 59–60. While the victim was in the same position, he then raped her. Id. at 60–61. After defendant had finished the sexual assault, he "let [her] get up and get dressed. And he got dressed also [and] ... was apologizing to me ... and he was asking me not to call the cops and turn him in." Id. at 62.

Count two of the indictment charged defendant with having "kidnapped [the victim] ... with the intent to inflict ... a sexual offense on her" and count five of the indictment charged defendant with the crime of "sexual assault, a class 2 felony, by engaging in sexual intercourse with [the victim], without her consent."

## B. The Legal Test

### 1. *Arizona*

This court uses the identical elements test to determine whether a constellation of facts constitutes a single act, which requires concurrent sentences, or multiple acts, which permit consecutive sentences. *State v. Tinghitella*, 108 Ariz. 1, 3, 491 P.2d 834, 836 (1971). We apply this test

> by eliminating the evidence supporting the elements of one charge and then determining whether the remaining evidence supports the elements of the other charge.

*State v. Vaughn*, 147 Ariz. 28, 30, 708 P.2d 453, 455 (1985). This test, however, is not entirely satisfactory because determining "when two offenses are distinguishable so as to permit the imposition of cumulative punishment" is often difficult. *State v. Ferguson*, 119 Ariz. 55, 61, 579 P.2d 559, 565 (1978) (Struckmeyer, V.C.J., specially concurring).

Even a cursory review of precedent illustrates the point. In *Vaughn*, we upheld consecutive sentences for murder and armed robbery because the evidence showed that the victim was aware of the robbery before his death. 147 Ariz. at 31, 708 P.2d at 56; *see also State v. Woods*, 141 Ariz. 446, 687 P.2d 1201 (1984), and *State v. Rumsey*, 130 Ariz. 427, 636 P.2d 1209 (1981). In *Ferguson*, however, we vacated consecutive sentences for murder and robbery because the defendant had shot the victim in the head from behind, before the victim was aware of the robbery. Applying the *Tinghitella* test, we held that "this shooting was the only force available to support the subsequent acts which might otherwise be characterized as robbery." *Ferguson*, 119 Ariz. at 61, 579 P.2d at 565.

Analytically, these results follow, but we question the rationality of a rule that permits consecutive sentences for the killer who shoots the victim from the front but not for the killer who shoots the victim in the back. The problem is that no crime involves "an act." [4] Like other human

---

4. We note that A.R.S. § 13–105(1) defines act as "a body movement." To focus on this definition, however, leaves us in no better position—

we would then have the same problem in defining when a body movement begins and ends.

transactions, crime is not a series of isolated events measurable by the rules of quantum mechanics. Rather, every crime is a series of interrelated events and movements—a total transaction with indefinite spatial and temporal boundaries.

This analytic difficulty has plagued both this court and others.[5] We dealt with the identical elements test in *State v. Noble*, 152 Ariz. 284, 731 P.2d 1228 (1987). In *Noble*, we considered whether kidnapping and child molestation were a "single act," so as to invalidate consecutive sentences. We applied the *Tinghitella* test and upheld the consecutive sentences. The facts showed that defendant had approached the victim, dragged her some distance into some bushes, committed the sexual offense, then "walked with his victim for a few blocks and released her." *Id.* at 285, 732 P.2d at 1229. In concluding that the acts were separate we noted the following:

> We recognize that in some cases a kidnapping is merely incidental to or inherent in the nature of additionally charged crimes. [Citations omitted.] For instance, because the kidnapping statutes require only confinement without consent or legal authority, a defendant cannot commit child molestation, sexual assault or robbery without also committing a kidnapping. See A.R.S. § 13–1301(2). Whether moving a victim a slight distance to facilitate commission of another crime is sufficient to support a separate act and, thus, support consecutive sentences, is a more difficult issue which we decline to address today. Here, move-

ment was more than incidental to or inherent in the nature of the sexual [offense].

*Id.* at 287 n. 2, 731 P.2d at 1231 n. 2. The problem Chief Justice Gordon described in *Noble* presents itself today.

### 2. *Approaches followed in other states*

In a case involving a statute similar to A.R.S. § 13–116, the California Court of Appeal held that a defendant could not receive consecutive sentences for kidnapping and rape when the kidnapping was only incidental to the rape. *People v. Burns*, 158 Cal.App.3d 1178, 205 Cal.Rptr. 356 (1984). Only "where a defendant kidnaps a victim for one purpose, and then later forms an intent to rape, may he be punished for both kidnapping and rape." *Id.* at 1181, 205 Cal.Rptr. at 358. Defendant urges us to apply the California test to our sentencing statute. We reject this suggestion.

We find the *Burns* application of a "merely incidental" type analysis wholly unsatisfactory. Because the *Burns* analysis centers only on the defendant's subjective intent, it allows a defendant who robs or assaults to hold his victim for a lengthy period of time. As long as the defendant does not form the intent to kidnap, the court cannot punish him any more severely than the defendant who kidnaps and quickly commits the ultimate crime. In any event, *Noble* effectively rejects the *Burns* standard.

New York has taken a middle ground between *Burns* and *Noble*. In *People v.*

---

Actually, A.R.S. § 13–116 has never been interpreted literally. For instance, the words of the statute draw no distinction between single victims and multiple victims. Nevertheless, our courts have held that a single act that harms multiple victims may be punished by consecutive sentences. *State v. Gunter*, 132 Ariz. 64, 643 P.2d 1034 (Ct.App.1982). *See also State v. White*, 160 Ariz. 377, 773 P.2d 482 (Ct.App.1989) (defendant's car struck a group of four victims, killing one and injuring the others; the court of appeals upheld the imposition of consecutive sentences).

**5.** For whatever benefit it may bring by way of provoking thought on the subject, we note the distinction between the identical elements test, which focuses on the facts of the transaction

and the conduct of the defendant in determining what is "an act" under § 13–116, and the test used for double jeopardy analysis, which "focuses on the proof necessary to establish the statutory elements of each offense, rather than on the actual evidence to be presented at trial." *Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980) (citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (test for double jeopardy is whether each statute "requires proof of a fact which the other does not")); *see also Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) (double jeopardy clause does not protect against consecutive sentencing).

314

*Cassidy*, 40 N.Y.2d 763, 358 N.E.2d 870, 390 N.Y.S.2d 45 (1976), the New York Court of Appeals held that a defendant could not be separately punished for assault, attempted sexual abuse, and kidnapping. New York espouses a

> merger doctrine [that] is intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and ... independent criminal responsibility may not fairly be attributed to them.

40 N.Y.2d at 767, 358 N.E.2d at 873, 390 N.Y.S.2d at 47. In our view, this test comes somewhat closer to rational application, though we are given pause by its application under the facts of *Cassidy* (defendant grabbed a young woman from the sidewalk, dragged her approximately seventy feet at knife point, forced her into a garage where he attempted to sexually assault her). *Noble* may prevent us from applying the "merger doctrine" to facts similar to *Cassidy*.

Many states have also found it difficult to determine what crimes may be charged when a "single act" constitutes two or more distinct and separate offenses. Indeed, a distinct split of authority exists pertaining to the prosecution of kidnapping in crimes also involving rape, robbery, and similar offenses. *See* Annotation, *Seizure or Detention for Purpose of Committing Rape, Robbery, or Similar Offense as Constituting Separate Crime of Kidnapping*, 43 A.L.R.3d 699 (1972). The cases collected in the annotation

> represent two general and opposing views. One view is that the seizure or detention of the victim, with any accompanying movement, is necessarily sufficient to constitute the separate crime of kidnapping.... [T]he fact of a forcible removal, and not the distance of the forcible removal, [constitutes] the separate crime of kidnapping. The other view, quite logically, is that the seizure or detention alone is not necessarily sufficient to constitute the separate crime of kidnapping. Here, the courts reasoned that *movements merely incidental* to the

commission of a rape, robbery, or similar offense, and *which did not substantially increase the risk of harm* ... necessarily present in the rape, robbery, etc., did not constitute the separate crime of kidnapping.

*Id.* at 701 (emphasis added) (footnotes omitted).

Insofar as prosecution is concerned, Arizona seems committed, though with little analysis, to the first view. *See State v. Pickett*, 121 Ariz. 142, 146, 589 P.2d 16, 20 (1978); *State v. Jacobs*, 93 Ariz. 336, 342, 380 P.2d 998, 1002–03, *cert. denied*, 375 U.S. 46, 84 S.Ct. 158, 11 L.Ed.2d 108 (1963). This may indeed be the better rule for prosecution of the crimes, though it does not define a single "act" under the sentencing statute.

Indeed, it is difficult to find cases that provide a recognized analytical framework with which to draw a bright line between a single act and multiple acts in situations where the restraint imposed on the victim in the ultimate crime necessarily involves the technical commission of a kidnapping. To hold that consecutive sentences are possible in all such cases circumvents the obvious legislative intent that a single act that violates multiple criminal statutes may be punished only under one of the statutes.

■ We believe, however, that two of the concepts found in the cases are useful in applying and improving the *Tinghitella* identical elements test. In determining whether consecutive sentences may be imposed for kidnapping and rape, as in this case, the court should consider whether the perpetrator's conduct in seizing or detaining the victim put the victim to a different or additional risk of harm than that inherent in the ultimate offense. If so, then the seizure or detention has been more than incidental to the ultimate crime and is more likely to be a separate act. This court has no desire to give a criminal a discount card to commit as many crimes as he or she may desire, secure in the belief that he will receive only concurrent sentences. Thus, if the perpetrator's conduct with regard to the seizure or detention preliminary to the

main crime caused the victim to suffer a risk of harm different from or additional to that inherent in the ultimate crime, such conduct weighs in favor of a finding that the seizure or detention was a separate act, allowing consecutive sentences.

If, on the other hand, the defendant's conduct in the commission of the preliminary crime did not increase the risk of harm to the victim, and if, under the facts, the defendant could not commit the ultimate crime without committing the lesser, then the facts would favor a finding that only a single act exists and that A.R.S. § 13–116 forbids consecutive sentences.

### 3. *Resolution*

Neither the parties nor the cases suggest an entirely satisfactory construct with which to interpret the statute. Nevertheless, we must give meaning to the statute prohibiting consecutive punishment. Absent a legislative provision of an analytical framework or statutory definition of an act that we can sensibly apply to A.R.S. § 13–116, we endeavor to construe the statute compatibly with the "body of law into which the provision must be integrated—a compatibility which, by a benign fiction, we assume [the legislature] always has in mind." *Green v. Bock Laundry Machine Co.*, — U.S. —, —, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring).

■ Thus, we will continue to apply *Tinghitella* and judge a defendant's eligibility for consecutive sentences by considering the facts of each crime separately, subtracting from the factual transaction the evidence necessary to convict on the ultimate charge—the one that is at the essence of the factual nexus and that will often be the most serious of the charges. If the remaining evidence satisfies the elements of the other crime, then consecutive sentences may be permissible under A.R.S. § 13–116. In applying this analytical framework, however, we will then consider whether, given the entire "transaction," it was factually impossible to commit the ultimate crime without also committing the secondary crime. If so, then the likelihood

will increase that the defendant committed a single act under A.R.S. § 13–116. We will then consider whether the defendant's conduct in committing the lesser crime caused the victim to suffer an additional risk of harm beyond that inherent in the ultimate crime. If so, then ordinarily the court should find that the defendant committed multiple acts and should receive consecutive sentences.

■ We apply these principles to the facts before us. Defendant received concurrent sentences for burglary and kidnapping and a consecutive sentence for sexual assault. Defendant had entered the victim's home, where he committed the ultimate crime of sexual assault. In convicting him of burglary, the jury must necessarily have found that he entered or remained in the house with intent to commit the sexual assault. *See* A.R.S. § 13–1506 (burglary statute). Thus, under the identical elements test defendant was eligible for consecutive sentences for burglary, kidnapping, and sexual assault. However, under the facts, he could not have committed the kidnapping and sexual assault without also committing the burglary. Therefore, we must determine whether the burglary added to the victim's risk of harm. Because the manner in which defendant committed the burglary exposed the victim to no additional risk of harm than that inherent in the ultimate crime of sexual assault, the burglary and the sexual assault were a single act within the meaning of § 13–116 and consecutive sentences would have been improper.

■ We turn then to the consecutive sentences imposed for kidnapping and sexual assault. Again, simply applying the identical elements test, defendant is eligible for consecutive sentences because he first grabbed the victim, threw her to the floor, and held her, thus committing the kidnapping, and then while holding her, committed the sexual assault. Defendant could not have committed the sexual assault, the ultimate crime, without restraining the victim's movement. Once again we must determine whether defendant added to the victim's risk of harm. Defendant went beyond

**316**

the restraint (kidnapping) inherent in the ultimate crime —— he held the victim on the floor, hit her with his fists, and strangled her. Thus, the manner in which he committed the kidnapping added to the victim's suffering and increased her harm or risk of harm beyond that inherent in the ultimate crime. We conclude, therefore, that the trial court properly imposed consecutive sentences on the kidnapping and sexual assault charges. The criminal who restrains and commits sexual assault by forcing himself on the victim should be severely punished.

## CONCLUSION

Fists and other body parts are not "dangerous instruments" for enhancement under A.R.S. § 13–604.02(A). Accordingly, defendant's sentences should not have been enhanced under that statute and he must be resentenced.

Under the facts of this case, A.R.S. § 13–116 allowed for the concurrent and consecutive sentences defendant received. Consecutive sentences were appropriate here for kidnapping and sexual assault because defendant not only restrained the victim to the extent necessary to commit the sexual assault, but first held, beat, and strangled her.

 We have searched the record for fundamental error, as A.R.S. § 13–4035 requires, and note that the trial judge, under A.R.S. §§ 13–604(M) and 13–604.02(A), sentenced defendant to life imprisonment without possibility of release for twenty-seven years on the kidnapping and sexual assault charges. We further note that under § 13–604.02(A), the maximum to which a judge can sentence a defendant is a life sentence without possibility of release for twenty-five years. The judge may have added the two extra years before defendant can be released by relying on A.R.S. § 13–604(M). However, this provision only applies to defendants who have committed felonies while on bail. Here, the record indicates that defendant was on parole, not bail, at the time of the criminal acts. We

leave the resolution of this question to the resentencing proceeding.

We affirm defendant's convictions, but must remand for resentencing in accordance with this opinion. The sentences for kidnapping and sexual assault may be consecutive to each other, but must be concurrent with the burglary sentence.

GORDON, C.J., and CAMERON and MOELLER, JJ., concur.

Justice William A. Holohan retired before the decision of this case; Justice Robert J. Corcoran did not participate in the determination of this case.