868 P.2d 1027

**STATE of Arizona, Appellee,**

v.

**Raymond Ayres HARPER, Appellant.**

**No. 1 CA–CR 92–0748.**

Court of Appeals of Arizona,
Division 1, Department C.

Nov. 4, 1993.

Review Denied March 16, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, Galen H. Wilkes, Asst. Atty. Gen., Phoenix, for appellee.

Allen, Kimerer & LaVelle by Michael B. Bernays, Phoenix, for appellant.

OPINION

EHRLICH, Judge.

Raymond Ayres Harper ("defendant") appeals from his convictions for theft and money laundering, and from the consecutive sentences imposed. For the following reasons, we affirm the judgment.

*FACTS AND PROCEDURAL HISTORY*

Pursuant to a written agreement, the defendant pled guilty to one count of theft and one count of money laundering, each a class 3 felony. The factual basis for the pleas was that the defendant was president of Harbor Financial Group, Inc., a corporation which solicited investors to fund real-estate loans secured by mortgages in exchange for a share of the return on the loans. Between

February and September 1987, the defendant sold stock in Harbor Financial while concealing from investors the fact that most of its loans increasingly were non-performing and that numerous entities in which investors had placed loans were "shell" entities which he controlled in part. The defendant also diverted approximately one million dollars of investor money to a mining venture. From July 1987 through 1989, when Harbor Financial was near collapse, the defendant further diverted approximately $1,244,860.46 in investor money to offshore and foreign locations to hide the money for personal use. He subsequently returned the money to the United States as investments in mining ventures and as cash. His activity contributed to a loss to investors of approximately ten million dollars.

The trial court sentenced the defendant to a mitigated four-year prison term for the theft conviction and the presumptive five-year term for money laundering, to be served consecutively.[1] It further ordered the defendant to pay restitution of $10,000,000 and two $100 felony assessments. The defendant timely appealed.

## DISCUSSION

The only issue we are asked to decide on appeal is whether the trial court erred in ordering that the defendant's sentences for theft and money laundering be served consecutively. The defendant relies on *State v. Gordon*, 161 Ariz. 308, 778 P.2d 1204 (1989), to insist that, because the offenses are indistinguishable, concurrent sentences are required by Arizona Revised Statutes Annotated ("A.R.S.") section 13–116, which prohibits double punishment. The state responds with its own analysis of *Gordon* to argue that the consecutive sentences do not violate section 13–116.

Multiple prison terms imposed on a defendant at the same time must run consecutively unless the court directs otherwise. A.R.S. § 13–708. However, section 13–116 provides that "[a]n act or omission which is made

punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent." The Arizona Supreme Court has formulated an analysis to determine whether a defendant's punishment for multiple crimes violates section 13–116. *Gordon*, 161 Ariz. 308, 778 P.2d 1204; *see also State v. Alexander*, 175 Ariz. 535, 536, 858 P.2d 680, 681 (App.1993) (*Gordon* is definitive on whether a single criminal episode can result in multiple punishments).

In *Gordon*, after being invited by the victim into her apartment, the defendant forcibly restrained and sexually assaulted her. He received concurrent sentences for second-degree burglary and kidnapping and a consecutive sentence for sexual assault. On appeal, the supreme court determined that the burglary and sexual assault constituted a single act within the meaning of section 13–116 and remanded for resentencing. 161 Ariz. at 315, 778 P.2d at 1211. In so determining, the court reiterated a test first articulated in *State v. Tinghitella*, 108 Ariz. 1, 3, 491 P.2d 834, 836 (1971), which instructs us to eliminate the evidence necessary to convict on the ultimate charge and then determine if the remaining evidence satisfies the elements of the other charge, in which case consecutive sentences are permissible. 161 Ariz. at 312, 315, 778 P.2d at 1208, 1211. The court elaborated on this "identical elements" test, adding that if it was factually impossible for the defendant to have committed the ultimate crime without also committing the secondary crime, it is more likely that the offenses are a single act for sentencing purposes requiring concurrent terms. *Id.* at 315, 778 P.2d at 1211. Further, we weigh whether the defendant's conduct in committing the lesser crime caused the victim to suffer a risk of harm beyond that inherent in the ultimate crime. *Id.* If so, consecutive sentences should be imposed. *Id.*

In discussing the identical-elements portion of the analysis under *Gordon*, the defen-

---

1. The plea agreement provided that the defendant would not receive a prison term greater than the five-year presumptive sentence for each count; it made no stipulation as to whether the sentences would be concurrent or consecutive. The state agreed, however, that if the defendant

were convicted in federal court of any offense concerning conduct described in the factual basis attached to the plea agreement, any sentence imposed in the present case would be concurrent with any sentence imposed by the federal court.

dant asserts that because the theft charge was based on his and his co-defendant's diversion from investors of $2,289,720.92 and the money-laundering charge was based on his diversion of his portion of this amount or $1,244,860.46, subtracting from the evidence the elements of theft leaves facts insufficient to support money laundering. The defendant further asserts that concurrent sentences are appropriate because, under the second level of inquiry, he could not have committed money laundering without also having committed theft. Finally, as directed by the final inquiry of *Gordon,* he claims that the victims were under no additional risk of harm than that created by the theft when he laundered the money.

 In *Gordon,* the defendant could not have committed kidnapping and sexual assault in the victim's home without also having committed burglary. In this case, the commission of one offense did not intrinsically involve the other offense and the two offenses did not constitute a single criminal act. The defendant committed theft when he fraudulently sold stock and solicited investor money for loans while concealing that most were non-performing. *See* A.R.S. § 13-1802(A)(1), (3) (1989).[2] The elements of theft were satisfied upon the defendant's receipt of the investors' funds. *State v. Shearer,* 164 Ariz. 329, 341, 793 P.2d 86, 98 (App.1989) (theft completed when defendant removed money from storage lockers with intent to steal). While this scheme provided the funds that subsequently were laundered, the defen-

dant committed a distinct criminal act when he then proceeded to utilize the money, knowing that it resulted from a criminal offense, theft in this case. A.R.S. § 13-2317(A) (1985);[3] *cf. Shearer,* 164 Ariz. at 341, 793 P.2d at 98 (fraudulent schemes separate criminal act from theft when defendant used stolen money to purchase property).

Contrary to the defendant's assertion, money laundering does not require proof of the underlying offense of theft; the state need only prove that the perpetrator knew, or had reason to know, that the proceeds were stolen. A.R.S. § 13-2317(A).[4] It is incidental that it is the same person who commits both offenses, in this case stealing the funds which later were laundered, because, unlike the sexual assault and burglary in *Gordon,* the defendant could have stolen investor funds without laundering them; he also could have transported criminal proceeds to offshore locations and then transferred them to shell entities, knowing that the funds were stolen, without having committed the theft.

We have searched the record on appeal for fundamental error pursuant to A.R.S. section 13-4035 and have found none.

The convictions and consecutive sentences are affirmed.

TOCI, P.J., and NOYES, J., concur.

---

2. "Theft" occurs when a person "without lawful authority ... knowingly: (1) Controls property of another with the intent to deprive him of such property; or ... (3) Obtains property or services of another by means of any material misrepresentation with intent to deprive him of such property or services; ...." Although the defendant also committed theft by diverting to a personal venture investor funds, *see* A.R.S. § 13-1802(A)(2), and these facts also were used to support the charge of money laundering, the defendant committed theft in alternative manners, the facts of which were exclusive to those of theft.

3. The statute provided that "[a] person who acquires or maintains an interest in, transfers, transports, receives or conceals the existence or nature of racketeering proceeds knowing or having reason to know that they are the proceeds of

an offense is guilty of money laundering in the second degree." "Racketeering" then is defined in A.R.S. § 13-2301(D)(4) (1988) as "any act, including any preparatory or completed offense, committed for financial gain, which is chargeable or indictable under the laws of the state in which the act occurred ... regardless of whether such act is charged or indicted, involving: ... (e) Theft."

4. Similarly, the state asserts mistakenly that theft is a predicate offense under A.R.S. § 13-2301(C)(4)(e). While theft is listed as a predicate offense for racketeering, *see* A.R.S. § 13-2301(*D*)(4)(e) (1989) (emphasis added), this definitional subsection only applies to sections 13-2312 through 13-2315; money laundering is defined in section 13-2317. Thus a defendant need not have committed the theft in order to launder funds procured by theft.