NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

ERIC LAWRENCE LOYD, *Appellant.*

No. 1 CA-CR 15-0033
FILED 1-7-2016

---

Appeal from the Superior Court in Maricopa County
No.  CR2014-115580-001
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Maricopa County Office of the Legal Advocate, Phoenix
By Kerri L. Chamberlin
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Jon W. Thompson and Judge Lawrence F. Winthrop joined.

_____

**H O W E**, Judge:

¶1          Eric Lawrence Loyd appeals his consecutive sentences for aggravated assault of a police officer and resisting arrest. Loyd argues that the trial court improperly imposed consecutive sentences because the two offenses constituted a single act. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          In April 2014, a Maricopa County Sheriff's deputy observed Loyd driving a motorized scooter with one hand and swerving between lanes. The deputy followed Loyd, and after checking the license plate and discovering that its registration had expired, decided to stop him. Loyd was "cordial" toward the deputy at first, but when the deputy handed Loyd four civil traffic citations relating to lack of insurance and a suspended license plate, Loyd became irate and began yelling profanities. The deputy told Loyd that he would receive another citation if he rode the scooter again, so Loyd pushed the scooter away. About twenty-five minutes later, however, the deputy saw Loyd riding the scooter again, so he pulled Loyd over.

¶3          Loyd got off of his scooter and yelled to a nearby elderly couple to call 911 because the deputy was harassing him. Seeing that Loyd's yelling caused the woman to become distressed, the deputy decided to arrest Loyd for disorderly conduct. The deputy asked Loyd to walk to the deputy's vehicle and place his hands on the hood, and Loyd complied. The deputy told Loyd that he was under arrest and took Loyd's hands behind his back one at a time.

¶4          Holding Loyd's thumbs together, the deputy then reached to place the handcuffs on Loyd's left hand. As he did so, Loyd stated, "I'm not going back to prison," and used his body to push off the deputy's vehicle and back against the deputy. Loyd also "flung his arms up," knocking the deputy's sunglasses off. The deputy, surprised by Loyd's strength in pushing against him, latched onto Loyd's left arm.

¶5        To gain control of Loyd and complete the arrest, the deputy decided to get Loyd on the ground. He knew that by doing so, he would better control Loyd and prevent him from fighting and kicking. But after the deputy took Loyd to the ground, Loyd began to flail his right arm, kick, and push, doing "anything possible to get from underneath" the deputy. Loyd's movements caused him and the deputy to move in circles on the ground as the deputy continued to try to keep Loyd down.

¶6        At one point during the struggle, the deputy felt Loyd try to pull the deputy's gun out of its holster. Fearing that the elderly couple and other witnesses may be harmed if Loyd got the deputy's gun, the deputy used his right shoulder to keep Loyd from doing so. The struggle to control Loyd on the ground continued for four minutes until other deputies arrived and arrested him.

¶7        The State subsequently charged Loyd with aggravated assault by exercising control of a peace officer's firearm, resisting arrest, and disorderly conduct. At the jury trial, the deputy testified that as a result of the struggle, he sustained a strained right shoulder and several scrapes and bruises on his arms and knees. The jurors acquitted Loyd of aggravated assault by exercising control of a peace officer's firearm, but convicted him of the lesser included offense of aggravated assault of a police officer, resisting arrest, and disorderly conduct.

¶8        The trial court sentenced Loyd to five years' imprisonment for aggravated assault with 96 days' presentence incarceration credit. For resisting arrest, the trial court suspended sentencing and imposed a consecutive term of three years' supervised probation. For disorderly conduct, the trial court sentenced Loyd to three months' incarceration, but granted an absolute disposition because Loyd's presentence incarceration credit covered that time. Loyd timely appealed.

**DISCUSSION**

¶9        Loyd argues that the trial court incorrectly imposed consecutive sentences for his convictions of aggravated assault of a police officer and resisting arrest because they constituted a single act. Loyd did not object to the imposition of consecutive sentences at trial, so we review his claim only for fundamental error. *State v. Carlson*, 237 Ariz. 381, 400 ¶ 78, 351 P.3d 1079, 1098 (2015). Imposition of an illegal sentence constitutes fundamental error. *State v. Martinez*, 226 Ariz. 221, 224 ¶ 17, 245 P.3d 906, 909 (App. 2011). To prevail under fundamental error, Loyd must establish that fundamental error exists and that the error caused him

prejudice. *State v. Henderson*, 210 Ariz. 561, 567 ¶ 20, 115 P.3d 601, 607 (2005). Thus, we must first determine whether the trial court committed some error. *State v. Lavers*, 168 Ariz. 376, 385, 814 P.2d 333, 342 (1991). Moreover, we review de novo whether the trial court complied with A.R.S. § 13–116 in imposing consecutive sentences. *State v. Cotten*, 228 Ariz. 105, 108 ¶ 8, 263 P.3d 654, 657 (App. 2011). Because Loyd's convictions arose from multiple acts, the trial court did not err in imposing consecutive sentences.

¶10 In Arizona, "an act . . . which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent." A.R.S. § 13–116. In determining whether a defendant has committed a single act pursuant to this statute, the court considers three factors. *Carlson*, 237 Ariz. at 400 ¶ 80, 351 P.3d at 1098. First, the court must decide which of the two crimes is the "ultimate charge—the one that is at the essence of the factual nexus and that will often be the most serious of the charges." *State v. Gordon*, 161 Ariz. 308, 315, 778 P.2d 1204, 1211 (1989). The court then considers the facts of each crime separately and "subtract[s] from the factual transaction the evidence necessary to convict on the ultimate charge." *Id.* If the remaining evidence satisfies the secondary crime's elements, the offenses may constitute multiple acts and consecutive sentences may be permissible. *Id.*

¶11 Second, the court considers whether "it was factually impossible to commit the ultimate crime without also committing the secondary crime" given the entire transaction. *Id.* If not, the offenses may constitute multiple acts. But if so, the court thirdly considers whether the defendant's conduct in committing the secondary crime "caused the victim to suffer an additional risk of harm beyond that inherent ultimate crime." *Id.* If the conduct caused an additional harm, then the court should find that the defendant committed multiple acts.

¶12 Although only two factors are necessary to properly impose consecutive sentences, all three factors show that Loyd committed multiple acts. Here, the ultimate charge is aggravated assault, and after subtracting the necessary evidence for that conviction, sufficient evidence remains to convict Loyd of resisting arrest. To commit aggravated assault of a police officer, one must commit assault and know or have reason to know that the person assaulted was a peace officer engaged in the execution of official duties. A.R.S. § 13–1204(A)(8)(a). The facts necessary to support the aggravated assault conviction are that Loyd kicked, pushed, and flailed his arm and legs after the deputy brought him to the ground, causing the deputy to sustain a sprained shoulder, bruises on his arms, and scrapes on his knees. Additionally, Loyd had reason to know that the deputy was a

peace officer executing official duties because the deputy had just pulled him over twice, issued him four civil traffic citations, and told Loyd that he was under arrest for disorderly conduct. Subtracting this evidence from the factual transaction, sufficient evidence remains to convict Loyd of resisting arrest. To commit resisting arrest, one must intentionally prevent a person known as a police officer from effecting an arrest by use of physical force. A.R.S. § 13–2508. Here, Loyd pushed back against the deputy with his body, stated that he was "not going back to prison," and flung his arms up, knocking the deputy's sunglasses off. Thus, because this remaining evidence satisfies the elements of resisting arrest, the first factor suggests that Loyd committed multiple acts.

¶13　　　　Second, given the entire transaction, it was not factually impossible for Loyd to commit aggravated assault without also resisting arrest. Loyd did not have to push back on the officer or fling his arms up to commit the assault on the deputy. Indeed, Loyd could have assaulted and injured the deputy by kicking and flailing his legs after the deputy had effected the arrest. *Cf. State v. Urquidez*, 213 Ariz. 50, 52 ¶ 9, 138 P.3d 1177, 1179 (App. 2006) (concluding that it would have been factually impossible for the defendant, a prohibited possessor, to commit aggravated assault with a deadly weapon without also committing prohibited possession of a deadly weapon). Thus, because committing one act did not require him to commit the other, the second factor also suggests that Loyd committed multiple acts.

¶14　　　　Although we can conclude that the trial court properly imposed consecutive sentences because the first two factors sufficiently suggest that Loyd committed multiple acts, the third factor also supports this conclusion. Specifically, Loyd's conduct in resisting arrest caused a risk of harm to the deputy in addition to the harm caused by committing aggravated assault. Loyd created a risk of physical injury to the deputy by using his body to push off of the deputy's vehicle and against the deputy. Loyd also flung his arms up, knocking the deputy's sunglasses off. This risk of physical harm was separate from and in addition to the risk and harm caused by Loyd's kicking and pushing the deputy while on the ground. Accordingly, because all three factors weigh in favor of viewing the two offenses as discrete and separate acts, the trial court did not err in imposing consecutive sentences under A.R.S. § 13–116.

## CONCLUSION

¶15   For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: ama