NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JANDIN ANTHONY RAUL MUÑOZ, *Appellant.*

No. 1 CA-CR 17-0270
1 CA-CR 17-0283
(Consolidated)
FILED 6-5-2018

Appeal from the Superior Court in Maricopa County
No.  CR2016-137390-001
CR2015-121642-001
The Honorable Alfred M. Fenzel, Judge, *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Edward F. McGee
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Paul J. McMurdie and Judge David D. Weinzweig joined.

J O H N S E N, Judge:

¶1         Jandin Anthony Raul Muñoz appeals from a sentence entered after the superior court revoked his probation.  Muñoz argues the sentence constituted a consecutive sentence improperly imposed for "a single act" under Arizona law.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2         The State charged Muñoz with one count of stalking (Count 1) and one count of aggravated harassment (Count 2), both committed against his ex-wife, J.R., between January 4 and May 11, 2015.  Muñoz pled guilty to both charges.[1]

¶3         At the change-of-plea hearing, Muñoz provided a factual basis for the convictions.  For Count 1, Muñoz admitted that between January 4 and May 11, 2015, he knowingly engaged in a "course of conduct" directed at J.R. "that would cause a reasonable person to fear for their safety, and in so doing, did cause [J.R.] to fear for her physical safety."  Muñoz stated the offense in Count 1 involved "text messages sent to the victim where he stated . . . 'snitches and hoes get killed on sight'" and "I will handle this myself."  Muñoz added that "over a course of time," he sent "a number of other Facebook messages and texts" with the "same type of content."

¶4         For Count 2, Muñoz agreed that between January 4 and May 11, 2015, J.R. had a valid order of protection against him, and that, in violation of that order, he contacted J.R. by "various means" and by doing so, he "harassed her and disturbed her."

¶5         According to the presentence report, J.R. and her family members contacted police about Muñoz on five different dates in January, February and May 2015.  Over this time period, Muñoz sent J.R. at least 55 text messages, numerous Facebook messages, slashed her and her father's

---

[1]     We view the facts in the light most favorable to sustaining the verdicts.  *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

tires, followed her vehicle from her residence, and parked outside of her parents' residence. Muñoz also sent J.R.'s sister the text message, "I kill for fun . . . we love sacrificing bitches like you." In the presentence report, Muñoz admitted contacting J.R. and making derogatory statements.

¶6        Upon acceptance of the plea, the superior court suspended sentence on Count 1 and imposed a three-year probation term. On Count 2, the court sentenced Muñoz to one year in prison. Muñoz completed his prison sentence on Count 2 in March 2016 and then began his term of probation for Count 1.

¶7        Later in 2016, in Maricopa County Superior Court cause number CR2016-137390-001, the State charged Muñoz with new crimes: One count of criminal damage (Count 1), two counts of assault (Counts 2 and 4), one count of kidnapping (Count 3), and one count of sexual assault (Count 5). A jury found Muñoz guilty of Counts 1, 2, 4 and 5 and of a lesser-included offense in Count 3. The jury also found Muñoz committed the crimes in the 2016 case while serving his probation term on Count 1 of the 2015 case.

¶8        At sentencing in the 2016 case, the superior court imposed concurrent sentences of incarceration, the longest of which was 10.5 years. The court also found the 2016 convictions constituted grounds to revoke the probation imposed on Count 1 of the 2015 case, and sentenced Muñoz to a slightly mitigated consecutive one-year term of imprisonment. The court explained that it imposed a mitigated term because Muñoz "already served one year in state prison on the other count" in the 2015 case. Muñoz did not object to imposition of a consecutive sentence.

¶9        Muñoz timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2018),[2] 13-4031 (2018), and -4033(A)(1) (2018).[3]

---

[2]        Absent material revision after the date of an alleged offense, we cite the current version of a statute or rule.

[3]        Under circumstances present here, a defendant who is placed on probation pursuant to a plea agreement may appeal a resulting sentence imposed upon revocation of probation. *State v. Regenold*, 226 Ariz. 378, 380, ¶¶ 11-12 (2011).

## DISCUSSION

**¶10**        On appeal, Muñoz argues the superior court erred in imposing consecutive sentences on Counts 1 and 2 of the 2015 case.  Muñoz contends the underlying crimes of stalking and aggravated harassment in the 2015 case were so interrelated they constituted "a single act," rendering consecutive sentences impermissible under A.R.S. § 13-116 (2018).

**¶11**        Because Muñoz failed to raise this issue in the superior court, we review for fundamental error.  *State v. Henderson*, 210 Ariz. 561, 567-68, ¶¶ 19-20 (2005).  Imposition of an illegal sentence constitutes fundamental error.  *State v. Martinez*, 226 Ariz. 221, 224, ¶ 17 (App. 2011).

**¶12**        In relevant part, § 13-116 states, "[a]n act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent."  To determine whether § 13-116 bars consecutive sentences, we look to the three-part test developed in *State v. Gordon*, 161 Ariz. 308, 315 (1989).

**¶13**        Under *Gordon*, we first consider the facts of the underlying crimes, subtracting the evidence needed to establish "the ultimate charge – the one that is at the essence of the factual nexus and that will often be the most serious of the charges."  *Id.* at 315.  If what remains is sufficient to prove the elements of the secondary crime, then § 13-116 may not bar consecutive sentences.  *Id.*  Second, we determine whether "it was factually impossible to commit the ultimate crime without also committing the secondary crime.  If so, then the likelihood will increase that the defendant committed a single act under A.R.S. § 13-116."  *Id.*  Third, we consider whether the secondary crime exposed the victim to "additional risk of harm beyond that inherent in the ultimate crime.  If so, then ordinarily the court should find that the defendant committed multiple acts and should receive consecutive sentences."  *Id.*; *see also State v. Roseberry*, 210 Ariz. 360, 370-71, ¶¶ 57-62 (2005).

**¶14**        Applying *Gordon*, we turn first to the underlying crimes of stalking and aggravated harassment.  To prove Muñoz committed the crime of stalking, the State had to show that he (1) intentionally or knowingly engaged in a course of conduct directed toward J.R. that would cause a reasonable person to fear for her safety or the safety of an immediate family member; and (2) J.R. did in fact fear for her safety or the safety of her

immediate family. A.R.S. § 13-2923(A)(1) (2015).[4] A "course of conduct" includes "[m]aintaining visual or physical proximity to a specific person or directing verbal, written or other threats, whether express or implied, to a specific person on two or more occasions over a period of time, however short." A.R.S. § 13-2923(C)(1)(a)(i) (2015). An "immediate family member" includes a sibling. A.R.S. § 13-2923(C)(2) (2015).

¶15 To prove Muñoz committed the crime of aggravated harassment, the State had to show that (1) with the intent to harass, he contacted, communicated or caused a communication with J.R., continued to follow J.R. in a public place for no legitimate purpose after being asked to stop, or repeatedly committed an act or acts that harassed J.R.; and (2) did so while there was a valid order of protection against Muñoz. A.R.S. §§ 13-2921(A)(1)-(3) (2018), -2921.01(A)(1) (2018). The relevant statute defines "harassment" as "conduct that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person." A.R.S. § 13-2921(E).

¶16 Applying the first test under *Gordon*, we determine whether, after subtracting evidence needed to establish the "ultimate charge" of stalking, evidence remains to prove aggravated harassment. In the two text messages cited in the presentence report and at the change-of-plea hearing, Muñoz threatened to hurt or kill J.R. and her sister. Muñoz also sent Facebook messages, damaged property, followed J.R., and went to her parents' residence. For the crime of stalking, the State needed to prove Muñoz directed threats toward J.R. on only two occasions. *See* A.R.S. § 13-2923(C)(1)(a)(i) (2015). The text messages specifically cited in the record, by themselves, would have supported the stalking conviction if (and Muñoz does not dispute this) they caused J.R. to fear for her and her sister's safety. Subtracting the text messages, sufficient evidence remained to prove Muñoz repeatedly contacted, followed and communicated with J.R. in a harassing manner in violation of a valid order of protection.

¶17 Under the second prong of *Gordon*, the record shows it was factually possible for Muñoz to commit each of the underlying crimes without committing the other. Again, Muñoz repeatedly contacted and communicated with J.R. on several occasions over the course of four months. Because Muñoz could have committed stalking by sending only two of these communications, he could have committed the crime of

---

[4] The relevant crimes pre-date the 2016 amendment to A.R.S. § 13-2923. *See* H.B. 2419, 52d Leg., 2d Reg. Sess., Ariz. Laws 2016, Ch. 44, § 1.

aggravated harassment by his other harassing conduct. Similarly, the validity of the order of protection is relevant only to the crime of aggravated harassment.

¶18 Evaluating the facts under the final issue from *Gordon*, we reach a similar result. Although both of Muñoz's crimes occurred over the same four-month period, they caused separate and distinct types of harm to the victim and the community. In committing stalking by sending the two cited text messages, Muñoz caused J.R. to live in fear for her and her sister's safety. In committing aggravated harassment, Muñoz's repetitive conduct and utter disregard for a court order caused J.R. to suffer additional emotional harm. Moreover, a violation of a court order undermines the efficacy of the judicial system and harms the community.

¶19 Based on the foregoing principles, the crimes of stalking and aggravated harassment in this case did not constitute "a single act," and the superior court did not err in imposing consecutive sentences.

## CONCLUSION

¶20 For the foregoing reasons, we affirm the sentence imposed on the stalking conviction.



AMY M. WOOD • Clerk of the Court
FILED: AA