858 P.2d 680

**STATE of Arizona, Appellee,**

v.

**Spencer ALEXANDER, Appellant.**

**No. 1 CA–CR 92–1573.**

Court of Appeals of Arizona, Division 1, Department E.

Aug. 24, 1993.

**536**

Grant Woods, Atty. Gen., by Paul J. McMurdie, Chief Counsel, Crim. Div., and

Christopher E. Avery, Asst. Atty. Gen., Phoenix, for appellee.

Wendy F. White and Sandra Jenney, Flagstaff, for appellant.

## OPINION

KLEINSCHMIDT, Judge.

In this case, we hold that the court improperly imposed a felony penalty assessment for every crime for which the defendant was convicted because several of those crimes were the result of a single act. We therefore reduce the felony penalty assessments imposed by the trial court.

In April 1992, the defendant, Spencer Alexander, conspired with three other men to rob an elderly man. Late one night, while Alexander stood watch, his cohorts knocked on the victim's door. When the victim opened the door slightly, the three others pushed their way into the house. One man knocked the victim to the floor, sat on top of him, and held him around the throat while the others took money and property from the victim's person and from various places in the house. Two of the men then began beating the victim in an effort to get him to tell them where he kept more money. The victim required hospitalization for his injuries.

Although defendant never entered the victim's home, his conduct made him an accomplice. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–303. Pursuant to a written plea agreement, the defendant pled guilty to the following: aggravated robbery, a class 3 felony; residential burglary, a class 3 felony; theft, a class 5 felony; and aggravated assault, a class 6 felony. The trial court sentenced the defendant to aggravated, concurrent terms of 10 years for aggravated robbery, 10 years for residential burglary, 3.25 years for theft, and 2.5 years for aggravated assault. The trial court ordered the defendant to pay restitution consistent with the plea agreement and also ordered him to pay $400 in felony penalty assessments, $100 for each felony committed.

■ The defendant contends that the trial court erred in ordering him to pay felony penalty assessments for each of the four crimes for which he was convicted because each crime arose out of a single episode. Arizona Revised Statutes Annotated section 13–116 provides that "[a]n act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent." Felony penalty assessments imposed pursuant to A.R.S. section 13–812 are forms of pecuniary punishment constituting a sentence and are thus subject to the limitations imposed by section 13–116. *State v. Sheaves*, 155 Ariz. 538, 541, 747 P.2d 1237, 1240 (App.1987).

The definitive decision on the subject of whether a single criminal episode can result in multiple punishments is *State v. Gordon*, 161 Ariz. 308, 778 P.2d 1204 (1989). Under *Gordon*, the first step in the analysis is to determine which crime arising out of the incident is the "ultimate crime." The "ultimate crime" is the crime which has a factual nexus to all the other crimes. The ultimate crime will usually be the primary object of the episode, and it will usually be the most serious crime committed on a given occasion. Once the ultimate crime is determined, the test to be applied is as follows. If, considering all the facts of the incident and subtracting the facts necessary to convict of the ultimate crime, the remaining facts satisfy the elements of the other crime(s), then multiple punishments *may* be permissible. Assuming that this first step is satisfied, multiple punishments are ordinarily permissible only if (1) given the entire criminal episode, the defendant could have committed the ultimate crime without committing the other crime(s) or (2) in committing the other crime(s), the defendant caused the victim to suffer additional risk or harm beyond that inherent in the ultimate crime. *Id.* at 315, 778 P.2d at 1211.

In applying the *Gordon* test to this case, we begin by determining which crime was the ultimate crime. The object of the episode was to rob the victim. The aggravated robbery was the ultimate crime, the one to which the others were simply ancillary.

Aggravated robbery is committed when a person, with the help of accomplices, threatens or uses force to take the victim's property against his will. A.R.S. §§ 13–1902 and 13–1903. In this case, all that was necessary to effectuate the aggravated robbery was for the accomplices to seize and restrain the victim while they took his property. This leaves the facts that the perpetrators entered and remained in the victim's home and that they beat and seriously injured the victim.

■ We consider whether a separate penalty can be imposed for theft. A person commits theft by knowingly controlling the property of another with the intent to deprive the other of the property. A.R.S. § 13–1802(A)(1). Taking the victim's property was also an element of the aggravated robbery, so theft involves the same act as did the ultimate crime. *See State v. Dugan*, 125 Ariz. 194, 195, 608 P.2d 771, 772 (1980) (theft is a lesser included offense of robbery). The trial court erred in imposing a felony penalty assessment for both aggravated robbery and theft.

■ We next consider whether a separate penalty can be imposed for aggravated assault. A person commits aggravated assault by intentionally causing serious physical injury to another person while the victim's capacity to resist is substantially impaired. A.R.S. §§ 13–1203(A) and 1204(A)(1) and (8). After subtracting all of the facts necessary to the commission of the ultimate crime of aggravated robbery, it remains that the victim whose ability to resist was substantially impaired by age was beaten and seriously injured. Accordingly, the trial court did not abuse its discretion in imposing a separate felony penalty assessment for aggravated assault.

■ The most difficult question is whether an additional penalty can be imposed for the residential burglary. Residential burglary is committed when a person enters or remains in a residence with the intent to commit a theft or any felony therein. A.R.S. § 13–1507. After sub-

tracting the facts necessary to establish aggravated robbery from the facts which establish residential burglary, there still remains the fact that the defendant's three cohorts entered and remained in the victim's house for the purpose of robbing him. Thus, under the first step of the *Gordon* test, the trial court *may* have been able to impose a felony penalty assessment for both the aggravated robbery and the residential burglary.

The question then becomes, could the defendant have committed the aggravated robbery without committing the burglary? The answer is, since the victim was in his house, the robbery could not have been committed without also committing the burglary. *Gordon*, which also involved a burglary followed by an assault, recognized as much.

Our conclusion that the robbery, in this case, could not have been committed without committing the burglary does not, however, end the inquiry. The question devolves into this: In committing the burglary, did the perpetrators cause the victim to suffer additional risk or harm beyond the harm entailed by the aggravated robbery? Under the particular facts of this case—in which the forced entry of the house and the restraint and threat applied for the purpose of committing robbery were simultaneous—the victim was not subjected to an additional harm or risk. Accordingly, an added penalty assessment for burglary was improper.

Our resolution of this last facet of the case requires additional explanation. The burglary of a residence is particularly serious for two reasons. First, a residence is a place of family repose and is entitled to special protection for that reason. Second, residential burglary carries an enhanced risk of a violent confrontation because homes are apt to be occupied at all times of the day and night. *See State v. Browning*, 175 Ariz. 236, 854 P.2d 1222 (App.1993).

The invasion of the sanctity of the home, in and of itself, might well be the added harm that justifies a separate and additional penalty. *Gordon*, without discussing the point, appears to foreclose this approach. In any event, the case before us need not turn on that issue because we believe that *Gordon* otherwise supports the conclusion we reach. The court in *Gordon* noted that "every crime is a series of interrelated events and movements—a total transaction with indefinite spatial and temporal boundaries." *Gordon*, 161 Ariz. at 311, 778 P.2d at 1207. Looking at the total transaction, *Gordon* held that since "the manner in which the defendant committed the burglary exposed the victim to no additional risk or harm than that inherent in the ultimate crime of sexual assault, the burglary and the sexual assault were a single act...." 161 Ariz. at 315, 778 P.2d at 1211. Using the analytical framework that *Gordon* provides, which is to say looking at how the total criminal transaction occurred, we find that there was no time lapse between the entry and the robbery and that the burglary and the robbery were therefore but two crimes emanating from a single act.

We have reviewed the record for fundamental error pursuant to A.R.S. section 13–4035, and we have found none. We affirm the conviction and sentence but modify the order for felony penalty assessments pursuant to A.R.S. section 13–4037, reducing it from $400 to $200.

CLABORNE, P.J., and NOYES, J., concur.