968 P.2d 606

**STATE of Arizona, Respondent,**

v.

**James CORNISH, Petitioner.**

**No. 1 CA–CR 96–0922–PR.**

Court of Appeals of Arizona,
Division 1, Department E.

May 26, 1998.

As Amended June 17, 1998.

Review Denied Dec. 7, 1998.

---

534

Richard M. Romley, Maricopa County Attorney by Diane E.W. Gunnels Rowley, Deputy County Attorney, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by James L. Edgar, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

THOMPSON, Judge.

¶ 1    James Cornish (defendant) petitions this court to review the trial court's summary dismissal of his petition for post-conviction relief.   Because the facts in this matter establish that the crime of attempted aggravated assault is a dangerous offense, and because consecutive sentences are appropriate, the petition is without merit.

1.  Subsequent laboratory testing did not establish that the moisture was due to the presence of

## FACTUAL AND PROCEDURAL HISTORY

¶ 2    Defendant forcibly entered the home of his victim and intentionally strangled her, causing a life-threatening injury.   Rendered unconscious by the attack, the victim later regained consciousness and found that her pants were unzipped and pulled down.   She also noticed moisture between her legs.[1]  Defendant was charged by indictment with second-degree burglary, a class 3 felony;  kidnapping, a class 2 felony;  attempted sexual assault, a class 3 felony;  and attempted second-degree murder, a class 2 felony, or alternatively, aggravated assault, a class 3 felony. He pled guilty to burglary, a class 3 nondangerous felony and attempted aggravated assault, a class 4 dangerous felony.   The parties stipulated that defendant would be sentenced to prison for not less than the presumptive term for the attempted aggravated assault, and five years supervised probation, consecutive to the prison term, on the burglary conviction.   The trial court accepted the plea agreement and sentenced defendant to the presumptive term of six years for attempted aggravated assault, a dangerous felony, and five years supervised probation, to be served consecutively to the prison sentence, for the crime of burglary.

¶ 3    Defendant then timely filed a petition for post-conviction relief.   In the petition, defendant argued that the convictions and sentences were invalid because defendant was illegally sentenced.   The state filed a response and, after considering the pleadings, the trial court summarily dismissed the petition.

## PETITION FOR REVIEW

¶ 4    Defendant timely petitions this court to review the trial court's summary dismissal of the petition for post-conviction relief.   In the petition for review, defendant argues the same two issues raised below:

   1) Attempted aggravated assault is a preparatory offense and therefore cannot be

semen.

dangerous pursuant to Ariz.Rev.Stat. Ann. (A.R.S.) § 13–604(F) (Supp.1996); and

2) The imposition of consecutive sentences was improper.

### 1. *Is Attempted Aggravated Assault a Dangerous Felony Pursuant to A.R.S. § 13–604(F)?*

¶ 5   A.R.S. § 13–604(F) reads as follows:

Except as provided in § 13–604.01, a person who is at least eighteen years of age or who has been tried as an adult and who stands convicted of a class 4, 5 or 6 felony involving the intentional or knowing infliction of serious physical injury or the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument without having previously been convicted of any felony shall be sentenced to imprisonment as prescribed in this subsection and shall not be eligible for suspension of sentence, probation, pardon or release from confinement on any basis except as specifically authorized by § 31–233, subsection A or B until the sentence imposed by the court has been served, the person is eligible for release pursuant to § 41–1604.07 or the sentence is commuted. The presumptive term may be mitigated or aggravated within the range prescribed under this subsection pursuant to the terms of § 13–702, subsections B, C and D. The terms are as follows:

| Felony | Minimum | Presumptive | Maximum |
|---|---|---|---|
| Class 4 | 4 years | 6 years | 8 years |
| Class 5 | 2 years | 3 years | 4 years |
| Class 6 | 1.5 years | 2.25 years | 3 years |

¶ 6   Defendant argues that this statute does not authorize treatment of preparatory offenses as dangerous felonies. He argues that it only applies to completed offenses.   To support his argument, he notes that other subsections of A.R.S. § 13–604 specifically mention preparatory offenses.   For example, subsections (A), (B), (C), and (S), of A.R.S. § 13–604 state that the terms of the particular subsection apply to a felony, "whether a completed or preparatory offense...."   Because certain subsections specifically state that a felony qualifies as dangerous or repetitive whether it is preparatory or completed, and because

that language is absent from subsection (F), defendant argues that preparatory offenses cannot be treated as dangerous pursuant to subsection (F).

¶ 7   Defendant's construction of the statute would lead to untenable results.   Chapter 6 of Title 13 deals with dangerous and repetitive offenders and sets forth applicable sentence ranges.   Subsections (A)—(D) set forth the minimum, presumptive, and maximum sentences for offenders with one or two historical prior felony convictions.   As noted, subsections (A)—(C) include the language that any otherwise qualifying felony qualifies whether it is a "preparatory or completed" offense.   The language does not appear in subsection (D).   There does not appear to be any rational basis for exclusion of this language.   The failure to include this language in subsection (D) was likely a legislative oversight.

¶ 8   Subsections (F) through (K) set forth the minimum, presumptive, and maximum sentences for offenders with a dangerous conviction, and a dangerous conviction with one or two prior dangerous convictions. None of these subsections includes the "whether preparatory or completed" offense language.   However, none of these subsections purports to limit application only to completed offenses.

¶ 9   The language of subsection (F) is plain and unambiguous.   Enhanced punishment applies to any person at least 18 years of age "who has been tried as an adult and who stands convicted of a class 4, 5 or 6 felony involving the intentional or knowing infliction of serious physical injury...."   By its own terms, this statute applies to any felony, whether preparatory or completed. As such, this court normally would not need to resort to statutory rules of construction. However, because the "whether preparatory or completed" offense language appears in four subsections and not in others, the disparity among subsections is confusing and consequently subject to interpretation.   *See Gibbons v. Superior Court*, 178 Ariz. 362, 364, 873 P.2d 700, 702 (App.1994) (noting that although the words of the statute are plain and unambiguous, the construction of sen-

tences was confusing and therefore the statute was open to interpretation).

¶ 10 Additionally, case law dealing with other enhanced penalty statutes has arrived at conclusions highly dependent on the text of the statutes that the court was interpreting. Attempt is a preparatory offense. *State v. Tellez,* 165 Ariz. 381, 383, 799 P.2d 1, 3 (App.1989). "Preparatory offenses are separate and distinct from substantive offenses." *Id.* (citing 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law,* § 6.1 (1986)). Because preparatory offenses are separate and distinct from substantive crimes, it has been held, under certain circumstances, that mandatory sentencing provisions for substantive offenses do not apply for a conviction of attempt to commit the underlying substantive offense. For example, in *State v. Wise,* 164 Ariz. 574, 578, 795 P.2d 217, 221 (App.1990), this court held that a mandatory fine should not have been imposed on a defendant who pleaded guilty to attempt to possess a narcotic drug. We held that the statutory fine only applied to the underlying substantive offense of possession of a narcotic drug. *Id.* The court reached this conclusion based upon the fact that the applicable statute, A.R.S. § 13–3408(E), provided the following:

> In addition to any other penalty prescribed by *this title,* the court shall order a person who is *convicted of a violation of any provision of this section* to pay a fine of not less than two thousand dollars or three times the value as determined by the court of the narcotic drugs involved in or giving rise to the charge, whichever is greater....

*Id.* (first emphasis added) (alteration in original). In *Wise,* the defendant was not convicted under A.R.S. § 13–3408. *Id.* Thus, the court held that although that provision defined some of the elements of the preparatory offense of attempt to possess narcotic drugs, the defendant pled guilty to a violation of A.R.S. § 13–1001 (attempt). *Id.*

¶ 11 Similarly, in *State v. Tellez,* the court held that the mandatory fine for sale of narcotics did not apply to a solicitation to sell narcotics. 165 Ariz. at 384, 799 P.2d at 4. Again, the court based its result on the fact

that the limiting language of A.R.S. § 13–3408 unambiguously limited the mandatory fine to violations of that specific section:

> In addition to any other penalty prescribed by this title, the court shall order a person who is convicted of a violation *of any provision of this section* to pay a fine of not less than two thousand dollars or three times the value as determined by the court of the narcotic drugs involved in or giving rise to the charge....

*Id.* at 382, 799 P.2d at 2 (emphasis added) (alteration in original). Although solicitation involves the underlying crime of sale of narcotics, solicitation was punishable under a different section of Title 13, A.R.S. § 13–1002.

¶ 12 In contrast, in *State v. Lammie,* 164 Ariz. 377, 793 P.2d 134 (App.1990), this court held that a statute requiring convicted sex offenders to register also applied to defendants convicted of attempted sexual offenses. In *Lammie,* we noted that although A.R.S. § 13–3821 required registration of " '[a] person who has been convicted of a violation of chapter 14 or 35.1 of this title,' " we concluded that the legislative history evidenced a clear legislative intent that for certain sexual offenses, anyone convicted of any sex-related offense was required to register with the county sheriff. *Id.* at 378–79, 793 P.2d at 135–36. The court noted the following:

> In former A.R.S. § 13–3821, the legislature expressly listed every sex crime requiring registration. In adopting A.R.S. § 13–3821 in 1983, the legislature did *not* list any specific crime or crimes. We conclude that the legislature, by adopting the broad language of A.R.S. § 13–3821, did *not* intend to exclude attempted sexual offenses.

*Id.* Additionally, the court relied on *State v. Cory,* 156 Ariz. 27, 749 P.2d 936 (App.1988), a Division Two case:

> However, appellant overlooks the fact that he was convicted of a violation of Chapter 14. Pursuant to the plea agreement, appellant agreed to plead guilty to a violation of A.R.S. § 13–1001, as well as §§ 13–1406, 13–1401, 13–3821, 13–701, 13–801 and 13–808. It would have been im-

possible for appellant to plead guilty to solely a violation of A.R.S. § 13–1001 since that chapter must always be viewed together with a substantive offense. In this case, the Chapter 10 violation must be viewed in conjunction with the Chapter 14 violation. The purpose of the registration requirement for defendants convicted of the substantive offenses certainly is served by the registration of persons convicted of preparatory offenses.

*Id.*

¶ 13 The *Lammie* court then noted that an attempted offense could not be committed in isolation from the substantive offense:

The unambiguous meaning of A.R.S. § 13–3821, interpreted in light of the historical and legal precedents relating to the offense of "attempt," requires that it be read to include substantive sex offenses and attempts to commit those offenses. The requirement to register as a sex offender applies to attempted sexual offenses.

*Lammie,* 164 Ariz. at 381, 793 P.2d at 138.

¶ 14 In this case, A.R.S. § 13–604(F) does not contain any limiting language. It does not purport to apply only to offenses committed "in this subsection." It unambiguously applies to any class 4, 5, or 6 felony.

¶ 15 However, as noted, because the legislature did include the "preparatory or completed" offense language in the first three subsections of that statute, an ambiguity is created.

¶ 16 When statutory interpretation is ambiguous, it is necessary for the court to determine the legislative intent of the statute. *State v. Sweet,* 143 Ariz. 266, 270, 693 P.2d 921, 925 (1985). In construing the statute, the court considers the policy behind the statute and the evil it was designed to remedy. *State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990) (citing *Calvert v. Farmers Ins. Co.,* 144 Ariz. 291, 294, 697 P.2d 684, 687 (1985)). Furthermore, courts are to construe criminal statutes according to the "fair meaning of their terms promoting justice and effecting the object of the law." A.R.S. § 13–104; *State v. Tramble,* 144 Ariz. 48, 51, 695 P.2d 737, 740 (1985).

To find legislative intent, the court must consider the content of the statute, the language used, its subject matter, historical background, the effects and consequences and the spirit and purpose of the law. *State v. Wedding,* 171 Ariz. 399, 406, 831 P.2d 398, 405 (App.1992) (citations omitted). Courts will apply constructions that make practical sense rather than hypertechnical constructions that frustrate legislative intent. *See State v. LeMatty,* 121 Ariz. 333, 337, 590 P.2d 449, 453 (1979).

¶ 17 Clearly, the legislature intended to sentence more harshly repetitive offenders or those offenders whose crimes involve the infliction of serious physical injury or the use of a deadly weapon or dangerous instrument. *State v. Hannah,* 126 Ariz. 575, 576, 617 P.2d 527, 528 (1980); *State v. Superior Court in and for Maricopa County,* 142 Ariz. 280, 281–82, 689 P.2d 539, 540–41 (1984); *but see State v. Allison,* 143 Or.App. 241, 923 P.2d 1224, 1229 (1996). Given the purpose of the repetitive and dangerous offense sentence enhancement scheme, penalties logically become progressively more severe based upon the degree of felony and the number of prior convictions, either dangerous or nondangerous. To interpret A.R.S. § 13–604 as defendant does would create a situation where a defendant who had committed an attempted class 2 or 3 felony, with *two* historical priors, would be subjected to a less severe sentence than a person who was convicted of an attempted class 2 or 3 felony with only *one* historical prior felony. The legislature clearly intended subsection (F) to apply to any felony—whether preparatory or completed. Consequently, defendant's sentence is not illegal.

¶ 18 We recognize an apparent anomaly here. Defendant, charged with aggravated assault by intentionally causing serious physical injury, was convicted only of *attempting* to cause serious physical injury. The finding of dangerousness, however, establishes that defendant accomplished the intended injury. The apparent incompatibility of these findings vanishes, however, upon consideration of A.R.S. § 13–110, which provides that a person may be convicted of an attempt to commit a crime although the

crime was completed. "This statute authorizes the reduction, via plea bargain, of a completed offense to an attempted offense." *State v. Sanchez,* 174 Ariz. 44, 45, 846 P.2d 857, 858 (App.1993). *See also State v. Rainwater,* 187 Ariz. 603, 931 P.2d 1113 (App. 1996) (attempt is lesser-included offense of intended crime; judgment properly entered on bargained-for, lesser, attempt charge). The trial court's acceptance of defendant's guilty plea to attempted aggravated assault did not mean that defendant failed to accomplish his goal of seriously injuring his victim; proof of the victim's serious injury at defendant's hands provided the factual basis for defendant's plea of guilty to attempted aggravated assault. There is no inconsistency in the trial court's acceptance of the plea to attempted aggravated assault and its finding of dangerousness, and there is nothing anomalous in defendant's conviction for attempted aggravated assault, dangerous.

### 2. *Were Consecutive Sentences Improperly Imposed?*

■ ¶ 19 Relying on A.R.S. § 13–116 and *State v. Gordon,* 161 Ariz. 308, 778 P.2d 1204 (1989), defendant argues that consecutive sentences were improperly ordered.[2] Defendant argues that the attempted aggravated assault could not have been committed without also committing the burglary. Consequently, he argues that A.R.S. § 13–116 precludes consecutive sentences. This argument is without merit. The state's response to defendant's petition for post-conviction relief completely and correctly addresses this argument. The state points out that, pursuant to *Runningeagle,* 176 Ariz. at 66, 67, 859 P.2d at 176, 177, burglary is factually separate from a crime of violence that is committed within the residence after a forced entry. When the elements of attempted aggravated assault are subtracted from the whole factual scenario, there remains evidence to support the crime of burglary.

¶ 20 Further, the state correctly notes that it was possible for defendant to commit the burglary without committing attempted aggravated assault, as it was possible to commit attempted aggravated assault without committing burglary, and that the victim did indeed suffer an additional risk of harm due to defendant's invasion of her home, above and beyond that occasioned solely by the violent attack. The harm done by an unwanted intrusion into the sanctity of the home presents a risk to property and is separately cognizable, and separately punishable, from the harm inflicted in a violent attack inside the home which presents a risk to life. *Id.*[3]

---

**2.** Defendant also cites to *State v. Alexander,* 175 Ariz. 535, 858 P.2d 680 (App.1993). In *Alexander,* an elderly man was robbed after the robbers had forced their way into his home. *Id.* at 536, 858 P.2d at 681. We noted that "[t]he invasion of the sanctity of the home, in and of itself, might well be the added harm that justifies a separate and additional penalty," but concluded that we were constrained by *Gordon* from authorizing separate punishments for the burglary and the robbery, because the burglary and the robbery were simultaneous. *Id.* at 538, 858 P.2d at 683,. We now consider that the supreme court has not so constrained us, in light of the holding in *State v. Runningeagle,* 176 Ariz. 59, 859 P.2d 169 (1993).

**3.** Here we note an important distinction between the facts in *Gordon,* 161 Ariz. at 309, 778 P.2d at 1205, which involved an initial entry into the residence with permission, and the facts in this case, in which, as in *Runningeagle,* 176 Ariz. at 62, 859 P.2d at 172, a forced non-consensual entry preceded the ultimate crime of violence. Notwithstanding that Gordon had initially entered his victim's residence with her permission, his presence in the apartment was deemed a burglary because, when he restrained and sexually assaulted her, he was found to have "remained" in the residence with a felonious intent. *See State v. Altamirano,* 166 Ariz. 432, 435, 803 P.2d 425, 428 (App.1990) ("It is clear that although a person enters another's premises lawfully and with consent, his presence can become unauthorized, unlicensed, or unprivileged if he remains there with the intent to commit a felony."); *State v. Embree,* 130 Ariz. 64, 633 P.2d 1057 (App.1981). Thus, Gordon "could not have committed the kidnapping and sexual assault without also committing the burglary," because it was only the commission of crimes of violence in the residence that made his presence there unlawful. Similarly, in *Gordon,* "the manner in which defendant committed the burglary exposed the victim to no additional risk of harm than that inherent in the ultimate crime of sexual assault" because he did not invade the victim's home, but was freely admitted into it. 161 Ariz. at 315, 778 P.2d at 1211. By contrast, defendant here violently forced his way in, invading the sanctity of the victim's home, constituting a risk to her property.

## CONCLUSION

¶ 21   For all of the above reasons, defendant failed to state a colorable claim for relief and the trial court did not abuse its discretion when it summarily dismissed the petition. We deny relief.

FIDEL, P.J., and GERBER, J., concur.