NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

IVAN TINEO FIGUEROA, *Appellant*.

No. 1 CA-CR 16-0193
FILED 9-13-2018

Appeal from the Superior Court in Maricopa County
No. CR2014-001424-001
The Honorable Michael D. Gordon, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED FOR
RESENTENCING**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Elizabeth B. N. Garcia
*Counsel for Appellee*

Mays Law Office, PLLC, Phoenix
By Wendy L. Mays
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Kent E. Cattani joined.

---

**C R U Z**, Judge:

**¶1**　　　Ivan Tineo Figueroa appeals his convictions and sentences for more than thirty criminal offenses, including multiple counts of aggravated assault, armed robbery, burglary, attempted armed robbery, and theft of means of transportation, and for individual counts of attempted kidnapping, attempted theft of means of transportation, and attempted robbery.　Figueroa argues the superior court erred when it: (1) imposed sentences in violation of his double jeopardy rights; (2) imposed consecutive sentences for offenses that constituted a "single act;" and (3) failed to strike a biased juror.　For the following reasons, we vacate two theft of means of transportation convictions, Counts 4 and 32, and one attempted theft of means of transportation conviction, Count 33.　We affirm the convictions for the remaining counts.　Given the nature of the offenses, we remand for resentencing for Counts 1, 2, 7, 8, 15, 16, 17, 18, 19, 22, 23, 26, 27, 30, and 31 but otherwise affirm the prison sentences imposed.

## FACTUAL BACKGROUND[1]

**¶2**　　　The State charged Figueroa with numerous criminal offenses arising out of a string of events starting at around 6:20 p.m. on February 24, 2014, involving several different groups of victims.　The following summary lists those events in chronological order.

I.　　M.L., R.C., and O.J. (Counts 1 through 9)

**¶3**　　　While R.C. and her nephew, M.L., were placing items in her car, Figueroa jumped over a nearby fence and pointed a gun at M.L. Figueroa told M.L., "[i]f you don't get into the car, I'm going to kill you," and tried to force him into the car.　When this attempt failed, Figueroa

---

[1]　　We view the facts in the light most favorable to sustaining the verdicts.　*State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

pointed the gun at R.C., repeated the same demand, and forced her into the car.

¶4        R.C.'s husband, O.J., rushed to the car to help his wife. Figueroa pointed the gun at O.J. and stated, "[g]et in the car. I'm going to kill you." O.J. refused and pulled R.C. out of the car. Figueroa jumped in R.C.'s car and sped away, taking items belonging to all three of the victims.

II.       H.H. and L.H. (Counts 10, 11, and 13)

¶5        H.H. and his wife, L.H., were pulling out of a trailer park when they saw Figueroa driving toward them at a high rate of speed. As Figueroa sped by H.H. and L.H., he shot twice out of his window and hit the couple's car with one bullet.

III.      The Body Shop (Count 14)

¶6        Figueroa eventually crashed R.C.'s car and climbed the fence of a nearby body shop. Seeing this, the owner of the body shop approached Figueroa with a BB gun in his hand. Figueroa jumped back over the fence and fled the area.

IV.       A.T. (Counts 15 and 16)

¶7        When A.T. answered the door at her parents' home, she saw Figueroa with a gun in his hand and immediately tried to close the door. Figueroa forced himself halfway through the door, waved the gun toward her, and yelled, "[g]ive me your keys." A.T. pushed Figueroa out of the home and locked the door.

V.        H.C. (Counts 17 through 19)

¶8        Figueroa opened the door to H.C.'s living room and demanded his keys. H.C. took his one-year-old daughter to a back bedroom of the home. Figueroa followed, pulled a gun from his pants, and repeated that he wanted H.C.'s keys. H.C. shut the bedroom door and blocked it with his feet. Before Figueroa left the home, H.C. heard him say, "I'm going to kill someone."

VI.       G.G. and Victim B (Counts 20 through 23)

¶9        Figueroa walked into G.G.'s bedroom and demanded her keys. When G.G. told Figueroa the car did not work, he pointed a gun at her. G.G.'s eight-year-old son, Victim B, ran up to her and Figueroa pointed the gun at the young boy's face. G.G. told Victim B to run and he hid in

another bedroom. Figueroa went to the laundry room, took clothing belonging to G.G.'s son, and left the home.

VII. R.O. and Victim A (Counts 24 through 27)

¶10 From her bedroom window, R.O. saw Figueroa trying to open her kitchen door and she shouted that he needed to leave. Figueroa turned and walked through the arcadia door to R.O.'s bedroom. R.O.'s three-year-old daughter, Victim A, was also in the bedroom. When R.O tried to block him, Figueroa pointed a gun at Victim A's face and demanded keys. At that moment, R.O.'s boyfriend arrived at the home and Figueroa left through the backyard.

VIII. J.T. and M.R. (Counts 28 through 32)

¶11 Figueroa jumped over R.O.'s fence into the adjacent backyard of J.T. and M.R. and entered their living room. Figueroa sat down beside M.R., placed a gun between them, and demanded her keys. As J.T. walked into the living room, Figueroa pointed the gun at him and demanded his keys. Figueroa retrieved the keys from J.T.'s pocket and took the couple's car.

IX. E.C., M.N., and Victim C (Counts 33 through 35)

¶12 Figueroa crashed J.T. and M.R.'s car into a wall, left the gun, and fled on foot. Figueroa ran into an eleven-year-old girl, Victim C, and pushed her from her scooter. Figueroa ran to a nearby car where E.C. was sitting in the passenger seat. Figueroa tried to open the passenger's side door, but E.C.'s husband, M.N., pushed him away from the car. Figueroa demanded M.N.'s keys, appeared to reach behind him for a gun, and jumped into the driver's seat. M.N. pulled Figueroa out of the car.

¶13 Shortly after, police officers arrested Figueroa. Officers found bullets and a pair of stolen keys in Figueroa's pockets. Although Figueroa admitted to committing many of the offenses, he claimed he was fleeing from people who wanted to harm him. The victims did not see anyone chasing Figueroa.

**PROCEDURAL HISTORY**

¶14 The State charged Figueroa with thirteen counts of aggravated assault, five counts of armed robbery, five counts of burglary in the first degree, three counts of attempted armed robbery, two counts of theft of means of transportation, one count of kidnapping, one count of

attempted kidnapping, one count of unlawful discharge of a firearm, one count of criminal trespass in the second degree, one count of attempted theft of means of transportation, and one count of attempted robbery.[2]

**¶15**      The jury found Figueroa guilty of all counts except Counts 3, 29, and 35. The jury also found that Counts 1, 2, 5-11, 15-28, 30, and 31 were dangerous offenses, Counts 21 and 25 were dangerous crimes against children, aggravating factors applied to Counts 4 and 32, and Figueroa was on probation at the time of the offenses. The superior court found that Figueroa had four prior felony convictions.

**¶16**      The superior court sentenced Figueroa to presumptive, consecutive prison sentences for Counts 1, 2, 9-11, 15, 19, 21, 23, 25, 27, 31, and 33, as well as presumptive, concurrent sentences for Counts 4-8, 13, 16-18, 20, 22, 24, 26, 28, 30, 32, and 34 to run consecutively to all other counts. In total, the court sentenced Figueroa to 220.25 years' imprisonment with 745 days presentence incarceration credit.[3] For Count 14, the misdemeanor offense, the court sentenced Figueroa to four months' incarceration with credit for time served.

**¶17**      Figueroa filed a timely appeal and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

I.      Double Jeopardy

**¶18**      Figueroa argues the superior court erred because it imposed multiple sentences for the same offense in violation of his double jeopardy rights under the United States Constitution.

---

[2]      The consolidated indictment represents charges from Maricopa County Superior Court cause numbers CR2014-001424-001 and CR2014-109338-001. Before trial, the State dismissed a misconduct involving weapons offense in Count 12.

[3]      In Figueroa's 2006 probation violation case, the superior court revoked Figueroa's probation and imposed a total of five years' imprisonment with 916 days presentence incarceration credit, to run consecutively to all counts in the 2014 case.

¶19        Although Figueroa's failure to object limits our review to fundamental error, *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005), a violation of double jeopardy constitutes fundamental error, *State v. Price*, 218 Ariz. 311, 313, ¶ 4 (App. 2008). We review this issue *de novo*. *State v. Siddle*, 202 Ariz. 512, 515, ¶ 7 (App. 2002).

¶20        A person may not "be twice put in jeopardy of life or limb" for the same offense. U.S. Const. amend. V. In *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the United States Supreme Court recognized, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

¶21        The double jeopardy bar prohibits dual punishment for the same offense unless each statutory provision applied "requires proof of a different element." *Id.* This is true even when a defendant receives concurrent sentences. *See Ball v. United States*, 470 U.S. 856, 865 (1985); *State v. Brown*, 217 Ariz. 617, 621, ¶ 13 (App. 2008).

## A. Offenses Involving Multiple Victims

¶22        The jury convicted Figueroa of thirty-one counts involving sixteen different victims. Of the sixteen victims, ten victims are listed in multiple counts and six victims are listed in a single count. Although each of the convictions arose out of conduct on a single day, each victim represents a separate act in Figueroa's string of offenses.

¶23        If the same offense harmed multiple victims, then multiple punishments do not violate a defendant's double jeopardy rights. *State v. Gunter*, 132 Ariz. 64, 70 (App. 1982). As such, the superior court's imposition of sentences for similar offenses committed against multiple victims did not violate Figueroa's double jeopardy rights. We find no error as to these sentences. We turn next to the sentences imposed in multiple counts involving the same victim.

## B. Armed Robbery and Theft of Means of Transportation

¶24        The jury convicted Figueroa of armed robbery and theft of means of transportation in Counts 1 and 4 involving R.C. and in Counts 30 and 32 involving J.T. and/or M.R. In each set of counts, Figueroa was convicted of taking the victim's vehicle at gunpoint.

¶25        In *State v. Garcia*, 235 Ariz. 627, 631, ¶ 11 (App. 2014), we held that theft of means of transportation is a lesser-included offense of armed robbery. *See also* A.R.S. §§ 13-1814(A)(1), -1902(A), -1904. "Because greater and lesser-included offenses are considered the 'same offense,' the Double Jeopardy Clauses forbid the imposition of a separate punishment for a lesser offense when a defendant has been convicted and sentenced for the greater offense." *Garcia*, 235 Ariz. at 629, ¶ 5 (citations omitted). If a defendant is convicted of both the greater and lesser offense, the conviction and sentence for the lesser offense should be vacated. *State v. Chabolla-Hinojosa*, 192 Ariz. 360, 365, ¶ 21 (App. 1998).

¶26        The imposition of sentences for both the greater offense, armed robbery, in Counts 1 and 30, and the lesser offense, theft of means of transportation, in Counts 4 and 32, violated Figueroa's double jeopardy rights. For these reasons, we vacate the convictions and sentences for the lesser included offense of theft of means of transportation in Counts 4 and 32.

      C. Attempted Robbery and Attempted Theft of Means of Transportation

¶27        The jury convicted Figueroa of attempted robbery and attempted theft of means of transportation committed against E.C. and/or M.N. in Counts 33 and 34. The convictions both involved Figueroa's attempt to take the vehicle of E.C. and/or M.N.

¶28        In *State v. Wall*, 212 Ariz. 1, 4, ¶ 15 (2006), the Supreme Court of Arizona held that attempted theft is a lesser-included offense of attempted robbery. *See also* A.R.S. §§ 13-1001(A)(1)-(2), -1802(A)(1) (2013), -1902(A). Similarly, attempted theft of means of transportation is a lesser-included offense of attempted robbery under our statutory scheme. *See* A.R.S. § 13-1814(A)(1); *Garcia*, 235 Ariz. at 630-31, ¶¶ 8-11. Double jeopardy principles prohibit the imposition of dual punishment for both the greater and lesser offense. *Garcia*, 235 Ariz. at 629, ¶ 5.

¶29        The imposition of sentences for both the greater offense, attempted robbery, in Count 34, and the lesser offense, attempted theft of means of transportation, in Count 33, violated Figueroa's double jeopardy rights. We, therefore, vacate Figueroa's conviction and sentence in Count 33.

D. Remaining Offenses

**¶30**     The remaining convictions that either involve the same victim or do not involve a specified victim, include armed robbery, aggravated assault, burglary in the first degree, kidnapping, attempted kidnapping, attempted armed robbery, and unlawful discharge of a firearm. *See* A.R.S. §§ 13-1001(A)(1)-(2), -1203(A)(2), -1204(A)(2) (2011), -1304(A)(4), -1508, -1902(A), -1904, -3107(A) (2011).

**¶31**     Multiple punishments for offenses involving the same victim do not violate the defendant's double jeopardy rights where the statutory provisions require proof of different facts. *See e.g., Price*, 218 Ariz. at 314, ¶ 9 (armed robbery and aggravated assault convictions did not violate double jeopardy); *State v. Eagle*, 196 Ariz. 27, 32, ¶ 22 (App. 1998) (kidnapping and sexual assault convictions did not violate double jeopardy); *State v. Jackson*, 121 Ariz. 277, 279 (1979) (burglary and robbery convictions did not violate double jeopardy); *State v. Rabon*, 115 Ariz. 45, 47 (App. 1977) (kidnapping and robbery convictions did not violate double jeopardy). Moreover, double jeopardy principles do not bar the imposition of multiple punishments for counts involving the same series of gunshots. *See State v. Miranda*, 198 Ariz. 426, 430, ¶ 20 (App. 2000) (multiple counts of disorderly conduct did not violate double jeopardy where the defendant fired a series of three gunshots).

**¶32**     For these reasons, the imposition of sentences in the remaining counts did not violate Figueroa's double jeopardy rights.

II.     Consecutive Sentences

**¶33**     Figueroa argues the superior court erred in imposing consecutive sentences for offenses that constituted "a single act" under A.R.S. § 13-116.

**¶34**     Because Figueroa failed to raise this issue with the superior court, we review for fundamental error resulting in prejudice. *Henderson*, 210 Ariz. at 567-68, ¶¶ 19-20. Typically, imposition of an illegal sentence constitutes fundamental error. *State v. Martinez*, 226 Ariz. 221, 224, ¶ 17 (App. 2011).

**¶35**     Pursuant to A.R.S. § 13-116, "[a]n act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent." To determine whether A.R.S. § 13-116 requires concurrent sentences, we look to the test developed in *State v. Gordon*, 161 Ariz. 308,

315 (1989). Under *Gordon*, we first consider the facts of the underlying crimes, subtracting the evidence needed to prove "the ultimate charge." *Id.* at 315. If what remains is sufficient to prove the secondary crime, then A.R.S. § 13-116 may not bar consecutive sentences. *Id.* Second, we determine whether "it was factually impossible to commit the ultimate crime without also committing the secondary crime. If so, then the likelihood will increase that the defendant committed a single act under A.R.S. § 13-116." *Id.* Third, we consider whether the secondary crime exposed the victim to "additional risk of harm beyond that inherent in the ultimate crime. If so, then ordinarily the court should find that the defendant committed multiple acts and should receive consecutive sentences." *Id.*

### A. Offenses Involving Multiple Victims

**¶36**        The superior court imposed consecutive sentences for counts involving multiple acts committed against sixteen separate victims.

**¶37**        We have held that the superior court may impose consecutive sentences for the same or similar offenses committed against different victims. *State v. Riley*, 196 Ariz. 40, 46-47, ¶ 21 (App. 1999). Although the offenses in this case shared a similar pattern, Figueroa committed a series of offenses and caused unique harm to multiple victims. Thus, the superior court did not err in imposing consecutive sentences for counts involving different victims.[4]

**¶38**        As with our double jeopardy analysis, we turn next to the imposition of consecutive sentences in counts involving the same victim or victims.

### B. Armed Robbery, Attempted Armed Robbery, and Aggravated Assault

**¶39**        The superior court imposed consecutive sentences for armed robbery and aggravated assault committed against R.C. in Counts 1 and 7 and M.L. in Counts 2 and 8. The court also imposed consecutive sentences for attempted armed robbery and aggravated assault committed against H.C. in Counts 17 and 18.

---

[4]        In Counts 21 and 25, the jury convicted Figueroa of dangerous crimes against children and consecutive sentences were mandatory under A.R.S. § 13-705(M) (2014).

¶40          Although armed robbery and aggravated assault are not the same offense for double jeopardy purposes, the imposition of consecutive sentences may still be barred by A.R.S. § 13-116. *See Siddle*, 202 Ariz. at 517, ¶ 17. We have found, under similar facts, that consecutive sentences for armed robbery and aggravated assault were prohibited. *See Price*, 218 Ariz. at 315-16, ¶¶ 14-20 (finding that armed robbery and aggravated assault with a gun did not expose the victim to additional risk).

¶41          In Counts 1, 2, 7, and 8, Figueroa pointed his gun at R.C. and M.L., told them to get in the vehicle or he would kill them, and, after a brief struggle, drove away in R.C.'s vehicle. In Counts 17 and 18, Figueroa waved his gun and demanded keys to H.C.'s vehicle.

¶42          As to each of the victims and their related counts, Figueroa's use of the gun was entwined in both the armed robbery, the attempted armed robbery, and the aggravated assault. The basis for Figueroa's aggravated assault convictions in Counts 7, 8, and 17 was the "use of a deadly weapon" to "[i]ntentionally [place] another person in reasonable apprehension of imminent physical injury." A.R.S. §§ 13-1203(A)(2), -1204(A)(2). The basis for the armed robbery convictions in Counts 1 and 2 was the use of a "deadly weapon" to take the victims' property. A.R.S. §§ 13-1902(A), -1904. In Count 18, the conviction rested on proof that Figueroa intentionally took a "step in a course of conduct planned to culminate in commission" of an armed robbery. A.R.S. §§ 13-1001(A)(2), -1902(A), -1904.

¶43          Under *Gordon*, the ultimate crimes are the armed robbery and the attempted robbery. *See State v. Alexander*, 175 Ariz. 535, 537 (App. 1993). The use of the gun needed to prove the ultimate crime involved the same facts needed to prove aggravated assault. *See State v. Jorgenson*, 108 Ariz. 476, 477 (1972). Under the analysis directed by these cases, because the offenses involved the same conduct, the aggravated assault did not expose the victims to additional risk of harm. *See Price*, 218 Ariz. at 316, ¶ 18; *Gordon*, 161 Ariz. at 315.

¶44          For these reasons, we find that the superior court erred when it imposed consecutive sentences for armed robbery, attempted armed robbery, and aggravated assault, as they relate to the same victim, in violation of A.R.S. § 13-116. We remand for resentencing as to Counts 1, 2, 7, 8, 17, and 18.

C. Armed Robbery, Attempted Armed Robbery, and Burglary in the First Degree

¶45        The superior court imposed consecutive sentences for armed robbery and burglary in the offenses involving the same victim in Counts 22, 23, 30, and 31. The court also imposed consecutive sentences for attempted armed robbery and burglary in the first degree in Counts 15, 16, 18, 19, 26, and 27.

¶46        Although double jeopardy principles do not bar punishment for such offenses, imposition of consecutive sentences for aggravated robbery and burglary is barred by A.R.S. § 13-116. *See Alexander*, 175 Ariz. at 538 ("we find that there was no time lapse between the entry and the robbery and that the burglary and the robbery were therefore but two crimes emanating from a single act.").

¶47        As to Counts 15 and 16 involving A.T., Counts 18 and 19 involving H.C., and Counts 26 and 27 involving R.O., Figueroa entered their respective homes, pointed his gun at them, and demanded keys to their vehicles. As to Counts 22 and 23 involving G.G., Figueroa entered G.G.'s home, pointed a gun at her, demanded keys, and left with her son's clothing. As to Counts 30 and 31 involving J.T. and/or M.R., Figueroa entered their home, displayed and pointed his gun, demanded keys, and left in their vehicle.

¶48        Once again, applying *Gordon*, the ultimate crimes are the armed robbery and the attempted armed robbery. *See Alexander*, 175 Ariz. at 537. Here, the basis for the armed robbery and attempted armed robbery convictions was Figueroa's use of a gun to take or attempt to take the victims' property. *See* A.R.S. §§ 13-1001(A)(1)-(2), -1902(A), -1904. The basis for the burglary conviction was Figueroa's entry into the victims' home, use of the gun, and intent to take the victims' property. *See* A.R.S. § 13-1508. Although the burglary requires the additional fact that Figueroa entered the victims' homes, this does not end our analysis. Under these facts, the burglary and the armed robbery were so simultaneous that they did not subject the victims to additional risks of harm.

¶49        For these reasons, the superior court erred in imposing sentences for armed robbery or attempted armed robbery consecutive to the sentences for burglary in the first degree, as they relate to the same victim. We remand for resentencing as to Counts 15, 16, 18, 19, 22, 23, 26, 27, 30, and 31.

### D. Kidnapping, Attempted Kidnapping, and Armed Robbery

**¶50** The superior court imposed consecutive sentences for armed robbery and kidnapping committed against R.C. in Counts 1 and 5, as well as consecutive sentences for armed robbery and attempted kidnapping committed against M.L. in Counts 2 and 6.

**¶51** The superior court may impose consecutive sentences for kidnapping and another related offense if the other offense could have been committed without restraining the victim's movement. *See e.g., State v. Carlson*, 237 Ariz. 381, 401, ¶ 83 (2015) (consecutive sentences permissible for kidnapping and felony murder); *Gordon*, 161 Ariz. at 315-16 (consecutive sentences permissible for kidnapping and sexual assault); *State v. Noble*, 152 Ariz. 284, 286-87 (1987) (consecutive sentences permissible for kidnapping and child molestation).

**¶52** For these counts, the ultimate crime is the armed robbery. *See Alexander*, 175 Ariz. at 537. Figueroa's armed robbery convictions were based upon his use of a gun to take the victims' property. *See* A.R.S. §§ 13-1902(A), -1904. The kidnapping and attempted kidnapping convictions rested upon proof that Figueroa forced, or attempted to force, R.C. and M.L. into the vehicle. *See* A.R.S. § 13-1304(A)(4). Because proof of Figueroa restraining or attempting to restrain the victims was not needed for the armed robbery, there was sufficient evidence to prove both offenses and the conduct exposed each victim to an additional risk of harm. The offenses did not constitute a "single act" under A.R.S. § 13-116.

**¶53** The superior court properly imposed consecutive sentences in Counts 1 and 5, involving R.C., and in Counts 2 and 6, involving M.L.

### E. Unlawful Discharge of a Firearm

**¶54** The superior court imposed the sentence in Count 13, unlawful discharge of a firearm, consecutive to the sentences in Counts 10 and 11, aggravated assaults, involving H.H. and L.H.

**¶55** The evidence in this case showed that Figueroa fired two shots out of the car window within the city limits. Although Figueroa claimed he exchanged gunfire with people chasing him, he admitted to firing the shots in the direction of the victims while driving through a trailer park. *See* A.R.S. §§ 13-1304(A)(4), -3107(A). For the purposes of A.R.S. § 13-116, these offenses do not constitute a "single act" because at least two shots were fired. *See Gordon*, 161 Ariz. at 315. Moreover, each of the two shots

fired by Figueroa caused a separate and unique risk of harm. *See Miranda*, 198 Ariz. at 430, ¶¶ 16-17.

**¶56** The superior court properly imposed the sentence in Count 13 consecutive to the sentences in Counts 10 and 11.

III.    Juror Bias

**¶57** Figueroa argues the superior court erred when it failed to strike a biased juror from the jury panel.

**¶58** During jury selection, the court asked whether any of the potential jurors, their family members, or close friends had ever been involved in a case involving similar facts. Juror 37 raised her juror number in the affirmative and explained that her sister was sexually assaulted at gunpoint. The superior court responded, "[t]here are no allegations in this case of any sexual assault. Does that make a difference to you in your ability to judge this case fairly and impartially?" Juror 37 responded, "I can try." The superior court further asked if Juror 37 could "compartmentalize" her personal experiences and, once again, Juror 37 responded, "I can try."

**¶59** Figueroa did not move to strike Juror 37 for cause or through the use of a peremptory challenge. Prior to empaneling the jury, the superior court noted that Juror 37 was still on the panel and asked whether the parties wanted to "keep her" or "take any remedial measures." Figueroa did not object to keeping Juror 37 on the jury panel or suggest any "remedial measures."

**¶60** If an appellant fails to use a peremptory challenge to strike a potentially biased juror, the issue is waived on appeal. *State v. Smith*, 228 Ariz. 126, 128, ¶ 6 (App. 2011). Applying "the cure-or-waive rule," we have held "that a defendant is required to use an available peremptory strike to remove an objectionable juror whom the trial court has refused to remove for cause to preserve the issue for appeal. Failing to do so waives any error." *State v. Rubio*, 219 Ariz. 177, 181, ¶ 12 (App. 2008). Moreover, a juror's statements regarding impartiality need not be phrased in absolute terms. *State v. Trostle*, 191 Ariz. 4, 13 (1997). The superior court is not required to remove a juror for cause unless the challenging party establishes that the juror cannot be fair and impartial. *See* Ariz. R. Crim. P. 18.4(b); *State v. Hoskins*, 199 Ariz. 127, 139, ¶ 37 (2000).

**¶61** Figueroa's failure to use his available peremptory challenge to remove Juror 37 prevents him from objecting on appeal. Figueroa has waived any error. Further, Figueroa has failed to show that the juror could

not be fair and impartial. Even if the issue were not waived on appeal, we would find no error.

## CONCLUSION

**¶62** For the foregoing reasons, we vacate the convictions and sentences in Counts 4, 32, and 33, affirm the convictions for the remaining counts, and remand for resentencing in Counts 1, 2, 7, 8, 15, 16, 17, 18, 19, 22, 23, 26, 27, 30, and 31 to comply with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA