IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KEVIN L. CLAY, *Appellant.*

No. 1 CA-CR 22-0571
FILED 8-1-2023

Appeal from the Superior Court in Maricopa County
No.  CR2017-148141-001
The Honorable Laura M. Reckart, Judge, *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Kevin M. Morrow
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jesse Finn Turner
*Counsel for Appellant*

**OPINION**

Judge Daniel J. Kiley delivered the opinion of the Court, in which Vice Chief
Judge Randall M. Howe and Judge Jennifer M. Perkins joined.

**K I L E Y**, Judge:

¶1        After the Maricopa County Victim Compensation Program (the "Program") paid the funeral expenses of the person Defendant Kevin Clay murdered, the superior court ordered Clay to pay restitution to the Program for those expenses. Clay now challenges the restitution order, asserting that it lacks a statutory basis. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In 2020, a jury found Clay guilty of murdering L.G. ("Victim") and committing other felonies. This Court affirmed Clay's convictions on appeal. *State v. Clay*, 1 CA-CR 20-0163, 2021 WL 1100171, at *1, ¶ 1 (Ariz. App. Mar. 23, 2021) (mem. decision).

¶3        Because Victim's next of kin could not afford to pay for her funeral, the Program stepped in to help, paying the funeral home $1,442. The State then sought an order requiring Clay to pay restitution to the Program. Over Clay's objection, the court granted the State's request and ordered him to pay $1,442 in restitution to the Program.

¶4        Clay appeals. We have jurisdiction under A.R.S. §§ 13-4031, -4033(A)(3), and 12-120.21(A)(1).

## DISCUSSION

¶5        Clay contends that the superior court erred in "award[ing] restitution to [the Program] for expenses it incurred in directly paying a funeral home for funeral expenses." He does not dispute that the cost of a murder victim's funeral is an economic loss properly awardable as restitution. *See State v. Spears*, 184 Ariz. 277, 292 (1996) (recognizing that murder victim's funeral expenses and related costs "are proper restitutionary items"). He argues, however, that the restitution order here must be set aside because the superior court lacked statutory authority to award restitution to the Program. We review restitution orders for abuse of discretion, *State v. Slover*, 220 Ariz. 239, 242, ¶ 4 (App. 2009), but review issues of statutory interpretation *de novo*, *State v. Lantz*, 245 Ariz. 451, 453, ¶ 9 (App. 2018).

¶6        Identifying A.R.S. §§ 13-603(C) and -804(A) as the "two statutory pathways" for awarding restitution, Clay argues that neither statute authorized the restitution order in this case. Noting that § 13-603(C) requires a sentencing court to award restitution to "the victim of the crime or to the immediate family of the victim if the victim has died," Clay asserts

that § 13-603(C) does not apply here because the Program was neither "the victim" of his crimes nor the victim's "immediate family." Clay acknowledges that § 13-804(A) is of broader scope than § 13-603(C), expressly authorizing restitution awards to "*any person* who suffered an economic loss caused by the defendant's conduct." (Emphasis added.) He notes, however, that § 13-804(A) authorizes a sentencing court to "allocate[]" restitution from "all or any portion of the fine imposed." Because the court imposed no fine here, Clay concludes, § 13-804(A) does not authorize the restitution award, which must be set aside as lacking a statutory basis.

¶7            In focusing on subsection A of § 13-804, Clay ignores subsection E, which controls the outcome of this case. Subsection E of § 13-804 provides in part that,

> *[i]f a victim has received reimbursement for the victim's economic loss* from an insurance company, *a crime victim compensation program* funded pursuant to section 41-2407 or any other entity, *the court shall order the defendant to pay the restitution to that entity.*

(Emphasis added.)

¶8            Admittedly, the "reimbursement" referenced in § 13-804(E) did not occur here; as Clay correctly points out, the Program "directly" paid the funeral home instead of reimbursing Victim's next of kin after they paid the bill initially. We will not, however, construe § 13-804(E) in a narrow or hypertechnical manner, *State v. Cornish*, 192 Ariz. 533, 537, ¶ 16 (App. 1998) ("Courts will apply constructions that make practical sense rather than hypertechnical constructions that frustrate legislative intent."), nor in a manner that "raise[s] form over substance," *see State v. Harrison*, 195 Ariz. 1, 4, ¶ 12 (1999). Instead, we interpret § 13-804(E) in a manner that promotes its purpose of holding defendants responsible for financial losses their actions have caused. *See State v. Merrill*, 136 Ariz. 300, 301 (App. 1983) (holding that construing "victim" narrowly to exclude insurance company that paid theft victim's claim would "improperly limit[] the rehabilitative and punitive purposes of requiring the payment of restitution").

¶9            By paying Victim's funeral expenses, the Program stepped into her family's shoes, bearing an economic loss her family would otherwise have suffered. *See State v. Prieto*, 172 Ariz. 298, 299 (App. 1992) (affirming restitution award to non-victim entity that paid for victim's counseling, thereby "stand[ing] in the shoes of the victim" who "would

unquestionably be entitled to restitution" had she "spent her own money" for counseling). Because § 13-804(E) requires defendants to pay restitution to insurance companies and victim compensation funds that bear the economic losses of the defendants' crimes, we hold that § 13-804(E) provides the statutory basis for the superior court's restitution order.

¶10 In entering the restitution order here, the superior court cited *State v. Leal*, 248 Ariz. 1 (App. 2019), in which this Court affirmed a restitution award to a tribal entity that paid a murder victim's funeral expenses. *Id.* at 2, ¶¶ 1-3. Rejecting the defendant's argument that the tribal entity was not entitled to restitution because it was not the "victim" of the murder, the *Leal* court noted that § 13-804 authorizes a restitution award to any "person" who sustains economic loss due to the defendant's conduct. *Id.* at 4, ¶ 11.

¶11 Clay does not dispute that the *Leal* court affirmed the award of restitution to a third party that paid the murder victim's funeral expenses but insists that *Leal* was "wrongly decided" and so "must be overruled." Noting that the *Leal* court relied on *State v. King*, 157 Ariz. 508 (1988), in affirming the trial court's award of restitution under § 13-804, Clay contends that the *Leal* court misinterpreted *King*.

¶12 In *King*, the defendant who pled guilty to theft, a class 5 felony, appealed from an order requiring him to pay restitution of $16,876. *Id.* at 508-09. Noting that, pursuant to the statute in effect at the time, theft was a class 5 felony if the value of the property was between $250 and $500, the defendant argued that his guilty plea "was not voluntarily and intelligently made" because he never "agreed to pay restitution in an amount exceeding $500, the limits of the crime to which he pled guilty." *Id.* at 509. Rejecting the defendant's argument, the Arizona Supreme Court observed that the terms of the plea agreement gave the defendant notice that he could be required to pay a fine of up to $150,000. *Id.* at 510. The defendant "was not under any illusion about the extent of a possible financial assessment," the Court stated, and "it should make no difference to the defendant" that the trial court imposed a fine of $16,876 and then allocated that sum as restitution pursuant to § 13-804(A). *Id.* at 508, 510.

¶13 According to Clay, *King* construes § 13-804 to authorize restitution to a non-victim "only when ordered as an allocation of a fine." *Leal* exceeded the holding of *King*, Clay contends, by affirming a restitution award to a non-victim under § 13-804 without first determining "if the award constituted an allocation of a fine."

**¶14**        Clay reads too much into *King*. Because the restitution at issue in *King* was awarded to a victim, *King* sheds no light on whether, or under what circumstances, restitution may be properly awarded to a non-victim. Nothing in *King*, therefore, conflicts with *Leal*'s resolution of that issue.

**¶15**        In any event, Clay's challenge to *Leal* is unavailing because *Leal* is inapposite. The issue presented in *Leal* was whether the entity to which restitution was awarded was eligible to receive it. That issue is not presented here; A.R.S. § 13-804(E) leaves no doubt that victim compensation funds, like insurance companies, are entitled to restitution when they bear the burden of economic losses caused by defendants that victims would otherwise bear.

**¶16**        Because making whole "the entity suffering the economic loss resulting from [a defendant's] criminal activity" best fulfills "the mandate of restitution," *Merrill*, 136 Ariz. at 301, and because § 13-804(E) expressly authorizes a court to award restitution to a crime victim compensation program for economic losses caused by a defendant, the court did not abuse its discretion by ordering Clay to pay $1,442 in restitution to the Program.

## CONCLUSION

**¶17**        We affirm.

